STATE OF CONNECTICUT *v.* JERRY D. DANIELS
(12948)
(12963)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued October 4—decision released November 22, 1988

*C. Robert Satti, Sr.,* state's attorney, with whom were *John M. Massameno* and *Steven Sellers,* assistant state's attorneys, for the appellant-appellee (state).

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellee-appellant (defendant).

PETERS, C. J. The principal issue in these appeals, after a remand for articulation, is whether the trial court abused its discretion in dismissing the penalty phase of a death penalty proceeding pursuant to General Statutes (Rev. to 1983) § 53a-46a,[1] and in impos-

[1] General Statutes (Rev. to 1983) § 53a-46a provides: "HEARING ON IMPOSITION OF DEATH PENALTY. AGGRAVATING AND MITIGATING FACTORS. (a) A person shall be subjected to the penalty of death for a capital felony only if a hearing is held in accordance with the provisions of this section.

"(b) For the purpose of determining the sentence to be imposed when a defendant is convicted of or pleads guilty to a capital felony, the judge or judges who presided at the trial or before whom the guilty plea was entered shall conduct a separate hearing to determine the existence of any mitigating factor concerning the defendant's character, background and history, or the nature and circumstances of the crime, including any mitigating factor set forth in subsection (f), and any aggravating factor set forth in subsection (g). Such hearing shall not be held if the state stipulates that none of the aggravating factors set forth in subsection (g) of this section exists or that one or more mitigating factors exists. Such hearing shall be conducted (1) before the jury which determined the defendant's guilt, or (2) before a jury impaneled for the purpose of such hearing if (A) the defendant was convicted upon a plea of guilty; (B) the defendant was convicted after a trial before three judges as provided in subsection (b) of section 53a-45; or (C) if the jury which determined the defendant's guilt has been discharged by the court for good cause or, (3) before the court, on motion of the defendant and with the approval of the court and the consent of the state.

"(c) In such hearing the court shall disclose to the defendant or his counsel all material contained in any presentence report which may have been prepared. No presentence information withheld from the defendant shall be considered in determining the existence of any mitigating or aggravating factor. Any information relevant to any mitigating factor may be presented by either the state or the defendant, regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters, but the admissibility of information relevant to any of the aggravating factors set forth in subsection (g) shall be governed by the rules governing the admission of evidence in such trials. The state and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any mitigating or aggravating factor. The burden of establishing any of the factors set forth in subsection (g) shall be on the state. The burden of establishing any mitigating factor shall be on the defendant.

"(d) The jury or, if there is no jury, the court shall return a special verdict setting forth its findings as to the existence of any aggravating or mitigating factor.

ing a life sentence, after the jury was unable to reach a unanimous decision on the existence of a mitigating

"(e) If the jury or, if there is no jury, the court finds that one or more of the factors set forth in subsection (g) exists and that no mitigating factor exists, the court shall sentence the defendant to death. If the jury or, if there is no jury, the court finds that none of the factors set forth in subsection (g) exists or that one or more mitigating factors exist, the court shall impose a sentence in accordance with subdivision (1) of section 53a-35a.

"(f) The court shall not impose the sentence of death on the defendant if the jury or, if there is no jury, the court finds by a special verdict, as provided in subsection (d), that any mitigating factor exists. The mitigating factors to be considered concerning the defendant shall include, but are not limited to, the following: That at the time of the offense (1) he was under the age of eighteen or (2) his mental capacity was significantly impaired or his ability to conform his conduct to the requirements of law was significantly impaired but not so impaired in either case as to constitute a defense to prosecution or (3) he was under unusual and substantial duress, although not such duress as to constitute a defense to prosecution or (4) he was criminally liable under sections 53a-8, 53a-9 and 53a-10 for the offense, which was committed by another, but his participation in such offense was relatively minor, although not so minor as to constitute a defense to prosecution or (5) he could not reasonably have foreseen that his conduct in the course of commission of the offense of which he was convicted would cause, or would create a grave risk of causing, death to another person.

"(g) If no mitigating factor is present, the court shall impose the sentence of death on the defendant if the jury or, if there is no jury, the court finds by a special verdict as provided in subsection (d) that (1) the defendant committed the offense during the commission or attempted commission of, or during the immediate flight from the commission or attempted commission of, a felony and he had previously been convicted of the same felony; or (2) the defendant committed the offense after having been convicted of two or more state offenses or two or more federal offenses or of one or more state offenses and one or more federal offenses for each of which a penalty of more than one year imprisonment may be imposed, which offenses were committed on different occasions and which involved the infliction of serious bodily injury upon another person; or (3) the defendant committed the offense and in such commission knowingly created a grave risk of death to another person in addition to the victim of the offense; or (4) the defendant committed the offense in an especially heinous, cruel or depraved manner; or (5) the defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value; or (6) the defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value."

We note that the United States Supreme Court's recent decision in *Maynard* v. *Cartwright*, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988),

factor. In *State* v. *Daniels,* 207 Conn. 374, 394–96, 542 A.2d 306 (1988) (*Daniels I*), this court determined that such disagreement authorized the trial court to declare a mistrial. Because we were, however, unclear about the reasoning underlying the trial court's action, we requested an articulation. We now affirm the trial court's decision and, after considering one other issue relating to sentencing that remained undecided in *Daniels I,* find no error.

For the purposes of the present appeals, we need only reiterate the following facts, which are more fully reported in *Daniels I,* supra, 378–81. After a trial to a three judge court, the defendant, Jerry D. Daniels, was convicted of one count of murder in the death of Christine Whipple pursuant to General Statutes (Rev. to 1983) § 53a-54a,[2] one count of capital felony in the

---

brings into question the constitutionality of General Statutes § 53a-46a (f) (4) (now § 53a-46a [h] [4]). In light of our disposition of this case and our "basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case"; *Moore* v. *McNamara,* 201 Conn. 16, 20, 513 A.2d 660 (1986); we do not reach this question in this appeal. See *State* v. *Madera,* 198 Conn. 92, 105, 503 A.2d 136 (1985).

[2] General Statutes (Rev. to 1983) § 53a-54a provides: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICA-TION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prose-cution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defend-ant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, men-tal defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivi-sion (2) of section 53a-35a unless it is a capital felony."

deaths of Christine Whipple and her daughter Amy Russell pursuant to General Statutes (Rev. to 1983) § 53a-54b (8),[3] and one count of second degree sexual assault concerning Christine Whipple pursuant to General Statutes (Rev. to 1983) § 53a-71.[4] The prosecution sought the death penalty for the capital felony conviction and the defendant elected a trial by jury at the penalty stage. The jury found the existence of an aggravating factor, but despite extensive deliberations and receiving a "Chip Smith" charge, could not reach a unanimous decision on the existence of a mitigating factor. The trial court then dismissed the jury and sentenced the defendant to two consecutive terms of life imprisonment, one each for the murder and capital felony convictions, and to a consecutive term of ten years imprisonment for the sexual assault conviction.[5]

On the prior appeal, in which both the state and the defendant took issue with various trial court rulings, we determined that the trial court had correctly con-

---

[3] *General Statutes (Rev. to 1983) § 53a-54b (8) provides:* "CAPITAL FELONY DEFINED. A person is guilty of a capital felony who is convicted of any of the following . . . (8) murder of two or more persons at the same time or in the course of a single transaction."

[4] General Statutes (Rev. to 1983) § 53a-71 provides: "SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age, or (2) mentally defective, mentally incapacitated or physically helpless, or (3) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (4) such other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person.

"(b) Sexual assault in the second degree is a class C felony for which nine months of the sentence imposed may not be suspended or reduced by the court."

[5] During oral argument the state pointed out a need to clarify our recitation of the facts underlying the procedural history of the penalty phase proceedings. See *State v. Daniels,* 207 Conn. 374, 381 n.6, 542 A.2d 306 (1988). It was the defendant and not the state that, during pretrial proceedings, moved for the three judge panel to preside over the sentencing hearing.

strued the death penalty statute to impose upon the state the burden of proving one of the statutorily defined aggravating factors beyond a reasonable doubt, and thereafter to impose upon the defendant the burden of proving a statutorily defined mitigating factor by a preponderance of the evidence. *Daniels I,* supra, 383–86. We concluded, furthermore, that neither of these burdens can be met without a unanimous finding by the trier of fact. Id., 386–94. Finally, we held that, if the jury cannot agree on the existence of a mitigating factor, the trial court has discretion to declare a mistrial. Id., 394–96. In such circumstances, we determined that the trial court may pursue one of three courses of action: it may declare a mistrial; it may make factual findings "acquitting" the defendant of the death penalty; or it may exercise its discretion, pursuant to General Statutes § 54-56,[6] to dismiss the death penalty proceeding. Id., 396–97. We were, however, unsure whether the trial court was aware of its authority to declare a mistrial and, if it were aware, what underlay its decision of fact and law leading to its imposition of a life sentence on the defendant for the capital felony conviction.[7] Accordingly, we remanded the

---

[6] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[7] In dismissing the jury and sentencing the defendant to life imprisonment for capital felony, the trial court remarked: "There is one precedent for this in Connecticut. That is the case of *State* v. *Usry* [205 Conn. 298, 533 A.2d 212 (1987)], I believe. Judge Corrigan in that situation had interpreted the failure of the jury to agree on mitigating factors to mean, that in effect, he was to sentence the defendant to life. I accept that. . . .

"I am now convinced that we have a death penalty in name only. We do not have a viable death penalty statute.

"I feel that the State had its best shot at this trial; and, with all of that, there was a division of six and six. . . .

case to the trial court for a further articulation of its reasons for dismissing the death penalty phase of the proceeding and imposing the life sentence. Id., 400–403.

The trial court responded with an articulation on June 13, 1988, which made it clear that the court understood that it had the authority to declare a mistrial, but had elected not to do so. The court then went on to describe why it had decided to dismiss the death penalty proceeding and to impose a life sentence upon the defendant. It stated that it "was determined to resolve the case with finality."

On this record, there are two issues before us. On the state's appeal, the question is whether a death penalty proceeding must be reinstated because the trial court either lacked the discretion to impose a life sentence or abused its discretion in its exercise. The defendant maintains, to the contrary, that principles of double jeopardy preclude appellate review of the trial court's decision. On the defendant's appeal, the question is one we did not reach in *Daniels I*: whether the trial court violated the principles of double jeopardy in imposing two life sentences upon the defendant, one for the murder of Christine Whipple and the other for the capital felony of killing Christine Whipple and Amy Russell. We find no error.[8]

I

Turning to the state's appeal, we must address two issues in order to ascertain whether the trial court erroneously imposed a life sentence. First, is the court's decision, as the defendant maintains, barred from

"I am confident now that there is no way anybody is ever going to be sentenced to death based upon the way our death penalty statute is written today." For further excerpts of the trial court's remarks, see *State* v. *Daniels*, 207 Conn. 374, 400–401, 542 A.2d 306 (1988).

[8] In light of this resolution, we need not address the state's evidentiary claim. See *State* v. *Daniels*, 207 Conn. 374, 381, 542 A.2d 306 (1988).

appellate review by applicable principles of double jeopardy? Second, did the court, as the state maintains, have authority or justification for its exercise of discretion to impose a life sentence?

The defendant's double jeopardy argument comes to us in two versions. The defendant maintains that, if the trial court exercised discretion in imposing a life sentence, its action is not further reviewable after the beginning of the execution of his life sentence. He further maintains that, if the trial court's action amounted to a fact-based "acquittal," then, as we held in *Daniels I*, supra, 397–99, such an "acquittal" bars a second capital sentencing hearing. We find neither of these arguments persuasive.

In *Daniels I*, we considered and rejected the defendant's argument that the beginning of the execution of his life sentence foreclosed any proceedings to impose a penalty that would be more severe. Id., 387. We noted that double jeopardy does not preclude the correction of a sentence that is illegal. Id. The defendant now renews this claim, arguing that any sentence that the trial court has discretion to impose is not illegal. While that argument might have force under other circumstances, such as when a trial court is selecting one among a range of permissible statutory sanctions, it is inappropriate in this case where the consequence of the trial court's decision is the dismissal of the penalty phase of a capital felony proceeding. Were such an exercise of discretion improper, the court would have acted illegally in imposing a life sentence. "Correction of this illegality, were it to be shown, would not violate double jeopardy. *United Sates* v. *Fogel,* 829 F.2d 77, 83 (D.C. Cir. 1987); *State* v. *Nardini,* 187 Conn. 109, 116, 445 A.2d 304 (1982); *State* v. *Pina,* 185 Conn. 473, 479, 440 A.2d 962 (1981); see *United States* v. *DiFrancesco,* 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980)." *Daniels I,* supra, 387.

The defendant's alternative double jeopardy argument rests on the proposition that the trial court's articulation amounted to an "acquittal on the merits" of the death penalty. We posited in *Daniels I,* supra, 397, that, if the trial court were to reach such a fact-bound determination, double jeopardy would bar further review because another capital sentencing hearing would be foreclosed. We held that the test was " 'whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.' *United States* v. *Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977)." *Daniels I,* supra, 399. Applying that test to the trial court's original oral memorandum and its subsequent articulation, we conclude that the trial court was not exercising the power conferred upon it, by Practice Book § 883,[9] to find as a matter of fact that "the evidence would not reasonably permit a finding of guilty."

Examination of the court's remarks at trial and in its articulation[10] discloses nothing that either expressly

[9] Practice Book § 883 provides in pertinent part: "After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon his own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty."

[10] The trial court's articulation reads: "This is a response to the order of the Supreme Court to articulate the reasons for the trial court to have imposed a life sentence, rather than declare a mistrial after the jury was evenly split on the issue of mitigating factors. The Supreme Court concluded that the trial court's explanations were ambiguous as to (1) whether it was exercising its discretion to impose a life sentence or (2) believed that it was required to do so as a matter of law.

"The trial court was exercising its discretion to impose a life sentence and did not believe it was required to do so as a matter of law. In fact, the trial court had concern as to whether it was in its discretion to impose a life sentence, rather than declare a mistrial. The court had no doubt that it could declare a mistrial. When a jury is hung, it generally follows that the court mandatorily orders a mistrial. The trial court was determined

or impliedly can be construed as the equivalent of a factual finding that the evidence produced at the hearing on mitigating factors reasonably required a finding that the existence of a mitigating factor had been proven. The statements that come closest to such a finding were the following. At the trial, the court remarked that " 'I feel that the State had its best shot at this trial; and, with all of that, there was a division of six and six. I see no further reason to prolong the Daniels sentencing phase of the trial any further.' " *Daniels I*, supra, 400. In its articulation, the court merely reiterated that a jury could reasonably have found the existence of a

to resolve the case with finality. This was only the second jury in the penalty phase that was split on the verdict. The other was *State* v. *Usry* [205 Conn. 298, 553 A.2d 212 (1987)]. The court merely cited *State* v. *Usry* for whatever value that case had as a precedent.

"The determination by the court to put an end to the Daniels case was based on several considerations.

"First and foremost, it was the court's firm conviction that the death penalty statute was unworkable, particularly based on the evidence adduced at the penalty phase of the trial. In the context of the statutory definition of mitigating factors, there was sufficient evidence for jurors to come to a reasonable conclusion that there were one or more mitigating factors. In fact, six jurors did.

"In addition, a presiding judge at a jury trial does not conduct the trial in an ivory tower. The court was aware that a retrial of the penalty phase would be enormously expensive—and to no avail. The state's attorney's office and the public defender's office spared no expense on the penalty phase hearing, even to the point where the public defender's office spent money on a lie detector test of the defendant. The court was aware of the fact that family and friends of victims of a serial killer in eastern Connecticut had formed an organization that demanded that state's attorneys prosecute to the limit in death penalty cases. The court determined that, if it declared a mistrial, the state's attorney would have to make a choice of retrying the penalty phase (which would have been a quixotic enterprise), or he would be forced to take action to have a life sentence imposed. To have taken the latter action, because of strong feelings generated by the serial killer, he would have been accused of 'plea bargaining.' The awareness of these undercurrents prompted the trial court to comment about the death penalty statute, which comments it later characterized as 'gratuitous remarks.'

"For the foregoing reasons, the trial court imposed a life sentence."

mitigating factor: "In the context of the statutory definition of mitigating factors, there was sufficient evidence for jurors to come to a reasonable conclusion that there were one or more mitigating factors. In fact, six jurors did." Indeed the court expressly articulated its intent to exercise its discretion, and emphasized its concern for the futility and expense of another trial, and its adverse impact upon the defendant, the victims' family, and society. We believe these statements indicate an exercise of discretion pursuant to General Statutes § 54-56, rather than an acquittal of the death penalty. In the light of these circumstances, the defendant's double jeopardy argument must fail.

We turn, then, to the state's contention that the trial court's exercise of its discretion was unwarranted as a matter of law. That claim, too, comes to us in two versions: a lack of authority to exercise discretion to dismiss the death penalty phase of a capital felony proceeding, and a misuse of such authority if it existed.

The state raises a serious question about the applicability of § 54-56 to the penalty phase of any capital felony prosecution, and particularly about its applicability in this case.[11] We decline to address this question at this juncture. In *Daniels I,* our remand for articulation specifically instructed the trial court, that "[i]f the trial court intended to exercise its authority under General Statutes § 54-56 to dismiss the death penalty phase of the proceeding and refused to grant a mistrial for this reason, it should say so explicity to provide a basis for review by this court. See *State* v. *Corchado,* [200 Conn. 453, 458–59, 512 A.2d 183

[11] The state argues that General Statutes § 54-56 does not confer upon a trial court the discretionary power to dismiss the penalty phase of a capital felony prosecution and that such an application of the statute would pose constitutional problems. The state, therefore, urges us to set aside the trial court's judgment and to remand the case for a new penalty phase hearing.

(1986)]." *Daniels I,* supra, 402–403. The applicability of § 54-56 thus impliedly became the law of this case.

This court follows the "well-recognized principle of law that the opinion of an appellate court, so far as it is applicable, establishes the law of the case upon a retrial, and is equally obligatory upon the parties to the action and upon the trial court." *Dacey* v. *Connecticut Bar Assn.,* 184 Conn. 21, 23, 441 A.2d 49 (1981); see also *Gray* v. *Mossman,* 91 Conn. 430, 434, 99 A. 1062 (1917). "The rule is that a determination once made will be treated as correct throughout all subsequent stages of the proceeding except when the question comes before a higher court"; F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.5, p. 593; and applies both to remands for new trial; *Dacey* v. *Connecticut Bar Assn.,* supra; *Laurel, Inc.* v. *Commissioner of Transportation,* 173 Conn. 220, 222, 377 A.2d 296 (1977); *New Haven Trust Co.* v. *Camp,* 83 Conn. 360, 368–69, 76 A. 1100 (1910); and to remands for articulation. *Powers* v. *Powers,* 186 Conn. 8, 9 n.1, 438 A.2d 846 (1982).

In accordance with the law of the case doctrine, the trial court's articulation did not reopen any matters previously decided in our opinion in *Daniels I.* The trial court's clarification that it had indeed intended to exercise its discretion in accordance with § 54-56 therefore does not require us to reconsider its authority to do so.

We consider finally the question that we did reserve in *Daniels I,* supra, 402–403, whether the trial court abused its discretion by imposing a life sentence rather than declaring a mistrial and ordering another death penalty proceeding. We conclude that the trial court did not abuse its discretion.

We announced the applicable test for abuse of the discretion conferred by § 54-56 in *State* v. *Corchado,* supra, where we held that a trial court's power to dis-

miss criminal proceedings "should be sparingly exercised and then only with great caution and awareness of the probable consequences." Id., 464. We noted that a proper exercise of discretion involved a balancing process "which weighs the interests of the state and society in having the defendant again stand trial against the interest of the defendant . . . in not being subjected to a new trial." Id., 458. "[T]he discretion to be exercised must be informed and guided by considerations of fundamental fairness that are ingrained in the concept of due process of law." Id., 459.

The trial court's comments both at the sentencing stage and in its articulation reveal just such a balancing as *Corchado* requires. The court's comments about the unworkability of the statute and the futility of pursuing a second penalty phase, along with its statements about the victims' family, the inhabitants of the area and the resources of the state's attorney's office and the public defender's office, evidenced its concern for the interests of the state and society. The court manifested its concern for fairness to the defendant in its observation that "[i]n the context of the statutory definition of mitigating factors, there was sufficient evidence for jurors to come to a reasonable conclusion that there were one or more mitigating factors. In fact, six jurors did." On this record, we are persuaded that "considerations of fundamental fairness" guided the trial court and that it weighed properly the separate interests in this case, as mandated by *Corchado*. Accordingly, we conclude that the trial court did not abuse its discretion under § 54-56 in declining to declare a mistrial and in sentencing the defendant to life imprisonment.

## II

The defendant's life sentence on the capital felony count was added by the trial court to another term of

life imprisonment on the murder count, and ten years' imprisonment on the sexual assault count. The defendant's appeal challenges the dual terms of life imprisonment as a violation of his right against double jeopardy. This issue is one we did not reach in *Daniels I.*

The defendant's claim focuses on the fact that his capital felony conviction was based upon the "murder of two or more persons [Christine Whipple and Amy Russell] at the same time or in the course of a single transaction." General Statutes (Rev. to 1983) § 53a-54b (8). He maintains that a life sentence for that crime, because it already encompasses the murder of Christine Whipple, cannot constitutionally be combined with another life sentence for his conviction on another count separately charging him with the murder of Christine Whipple. General Statutes (Rev. to 1983) § 53a-54a. We have recently held, "[i]t is a violation of the double jeopardy clause of the fifth amendment to impose punishment for both the capital felony and the murders that constitute the lesser included offense." *State* v. *Wood,* 208 Conn. 125, 145, 545 A.2d 1026, cert. denied, U.S.     , 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); see also *State* v. *Usry,* 205 Conn. 298, 318, 533 A.2d 212 (1987). Accordingly, the defendant urges us to hold that both convictions cannot stand.

The defendant's capital felony conviction necessarily included an underlying finding, beyond a reasonable doubt, that he had committed two murders in violation of § 53a-54a. The defendant conceded as much in oral argument in this court. Although the double jeopardy principle precludes double punishment for either of the underlying murders, it does not, in our view, preclude the imposition of one life sentence for each of them, when the state has joined a separate count of murder to a count of capital felony. In this case, the murder of Amy Russell was a lesser included offense encompassed within the capital felony conviction. For pun-

ishment purposes, it was not unconstitutionally duplicitous to join this conviction with the defendant's separate conviction for the murder of Christine Whipple.

It is of no moment that the trial court did not expressly explain its imposition of two life sentences as an exercise of its power with respect to lesser included crimes. Once the court concluded that the capital felony conviction should result in a life sentence, it clearly had the authority to reduce the capital felony conviction to that of the lesser included offense of murder, because the defendant was at all times fully aware of his potential liability for that offense. *State* v. *Scielzo,* 190 Conn. 191, 205, 460 A.2d 951 (1983); *State* v. *Saracino,* 178 Conn. 416, 421, 423 A.2d 102 (1979); *State* v. *Grant,* 177 Conn. 140, 147-49, 411 A.2d 917 (1979). We therefore conclude that the court did not err in imposing two life sentences upon the defendant.

There is no error.

In this opinion HEALEY, GLASS and HULL, Js., concurred.

SHEA, J., concurring. Although I agree with the majority in other respects, I disagree with its failure to address the issue of the applicability of General Statutes § 54-56 to the death penalty phase of a capital felony proceeding. The majority opinion justifies its refusal to resolve this issue upon the doctrine of the law of the case as applied to our remand in *Daniels I,* which ordered that "[i]f the trial court intended to exercise its authority under General Statutes § 54-56 to dismiss the death penalty phase of the proceeding and refused to grant a mistrial for this reason, it should say so explicitly to provide a basis for review by this court." *State* v. *Daniels,* 207 Conn. 374, 402–403, 542 A.2d 306 (1988) (*Daniels I*).

"The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States* v. *U. S. Smelting Co.*, 339 U.S. 186, 198, 70 S. Ct. 537, 94 L. Ed. 750, reh. denied, 339 U.S. 972, 70 S. Ct. 994, 94 L. Ed. 1379 (1950). An essential prerequisite to the application of the rule is that the issue must have been decided in the prior litigation. The most meticulous scrutiny of *Daniels I* does not even intimate that this court has decided whether § 54-56 was applicable to the death penalty phase of this case. The issue was never raised by counsel in *Daniels I* and, accordingly, was never briefed. The *Daniels I* opinion quite properly contains no discussion of its applicability, because it could not be determined from the record before us whether the trial court had intended to dismiss the proceeding pursuant to § 54-56. At that stage we could not have decided whether § 54-56 authorized such a dismissal because we could not ascertain whether the trial court had relied on that statute. Our purpose in ordering the remand was to obtain a record for the purpose of reviewing the trial court's action. For this reason we directed the trial court, if it had relied upon the statute, to "say so explicitly to provide a *basis for review* by this court." (Emphasis added.) *Daniels I,* supra, 403. Nowhere in *Daniels I* is it suggested that our review of the action of the trial court after the remand would be restricted to whether there had been an abuse of discretion in exercising the authority conferred by the statute without consideration of its applicability.

I agree, nevertheless, with the result reached by the majority, because § 54-56 expressly declares that the criminal courts of this state "shall at all times have jurisdiction and control over . . . criminal cases pending therein . . . ." In *State* v. *Corchado,* 200 Conn. 453, 512 A.2d 183 (1986), this court gave an expansive inter-

pretation to the further provision of the statute authorizing the court to "dismiss any information . . . if, in the opinion of the court, there is not sufficient . . . cause to justify . . . the placing of the person accused therein on trial." We held that the trial court had properly concluded that there was a lack of sufficient cause to retry a defendant, following a remand of this court for a new trial, when, by the time the second trial was to begin, the defendant had fully served the sentence originally imposed. Id., 460–61. We concluded that the term "cause" gave the court authority to dismiss where the legitimate interest of the state did not outbalance the "defendant's protestations that justice required no more from him than had been exacted." Id., 463–64. We analogized the authority of a court to dismiss a case under § 54-56 to the power of a court in New York to dismiss an information " 'in the interest of justice.' " Id., 461.

In my view, § 54-56 as it previously has been construed by the court and applied by the trial courts is applicable to the penalty phase of a capital felony prosecution. See *State* v. *Carroll,* 13 Conn. Sup. 112 (1944). Accordingly, I concur in the result.

CALLAHAN, J., with whom COVELLO, J., joins, concurring. I concur in Part I of the majority opinion because of the posture of our remand in *State* v. *Daniels,* 207 Conn. 374, 542 A.2d 306 (1988) (*Daniels I*). Since joining the opinion in *Daniels I,* however, I have been beset by serious doubts concerning the applicability of General Statutes § 54-56 to the penalty phase of a capital felony trial. I would, therefore, confine our present holding concerning § 54-56 to the present case. I agree with Part II of the majority opinion.