Jerry D. DANIELS, Petitioner–Appellee,

v.

George BRONSON, Warden, Respondent–Appellant.

No. 310, Docket 90–2210.

United States Court of Appeals, Second Circuit.

Argued Oct. 10, 1990.

Decided April 22, 1991.

Carolyn K. Longstreth, Asst. State's Atty., Wallingford, Conn., for respondent-appellant.

Joseph G. Bruckmann, Asst. Public Defender, Bridgeport, Conn., for petitioner-appellee.

Before MAHONEY, WALKER, Circuit Judges, and LEVAL, District Judge.[*]

[*] The Hon. Pierre N. Leval, United States District Judge, Southern District of New York, sitting by designation.

LEVAL, District Judge:

The State of Connecticut appeals from a grant of habeas corpus in favor of Jerry Daniels on his conviction in the Superior Court of Connecticut for the murders of Christine Whipple and her daughter Amy Russell. The district court, T.F. Gilroy Daly, Judge, found by virtue of the separate convictions and consecutive sentences imposed, that Daniels had been subjected to double jeopardy in violation of the Fifth Amendment. Judge Daly directed that the conviction for the murder of Christine Whipple be vacated. We affirm in part and reverse in part.

The facts were as follows: In June of 1984, Christine Whipple and her three-year old daughter, Amy Russell, shared a two-bedroom apartment with Mary Strong. During May and early June, Mary Strong had dated the defendant, but approximately one week before, she had broken up with him. On the afternoon of June 15, Mary had spoken with the defendant on the phone telling him she would call him later. Soon thereafter she left the apartment and did not return until early the next morning.

At approximately 1 a.m., the defendant, looking for Mary, arrived at the apartment. Having been admitted by Christine, the defendant then refused to comply with her request that he leave. An argument and physical struggle ensued. Christine broke away and ran into her bedroom where the defendant followed her. He pulled out a knife, which he had concealed in his sock, and stabbed her several times in the chest. She fell on the bed while he continued to stab her. When Amy awoke screaming, the defendant grabbed the child by the neck in an attempt to strangle her and then slit her throat. The defendant then proceeded to have sexual intercourse with Christine, stabbing her again afterwards. *See State v. Daniels*, 207 Conn. 374, 378–79, 542 A.2d 306, 310 (1988).

Daniels was tried before a three-judge panel of the Superior Court, and was found guilty of (1) capital murder for the murders

of two or more persons at the same time and in the course of the same transaction, Connecticut General Statutes § 53a–54b(8); (2) the murder of Whipple, § 53a–54a; and (3) second degree sexual assault § 53a–70(a).[1]

For the penalty phase of his capital trial, petitioner elected a jury, which found an aggravating factor but failed to reach a verdict as to the existence of a mitigating factor. Sentence was imposed by the three-judge court which declined to impose the death penalty but stated that, "Mr. Daniels should be incarcerated for as long as the law permits us to sentence him." The court then proceeded to sentence Daniels to life imprisonment on the capital felony charge, life imprisonment on the Whipple murder charge, and ten years for second degree sexual assault, specifying that all three terms were to run consecutively. Under the laws in effect at the time, the "life" sentence did not call for imprisonment for the remainder of the defendant's natural life but was the equivalent of a 60–year sentence.

Both sides appealed to the Supreme Court of Connecticut. The State contended it was entitled to either the death penalty or at least a retrial of the penalty phase. The defendant contended, *inter alia*, that the trial court's imposition of a life sentence constituted an acquittal on the death penalty issue so that retrial of the penalty phase would subject him to double jeopardy. He contended also that the convictions for both the multiple murder and one of the included murders violated double jeopardy.

The Supreme Court ruled that the State was not entitled to the death sentence given the divided jury on the mitigating factor, but that the defendant was not necessarily entitled to dismissal of the death penalty proceeding. The trial court might properly have either retried the penalty phase in view of the jury deadlock or, in its discretion, dismissed it, effectively acquitting the defendant with respect to the death sentence. It remanded for clarifica-

tion whether the trial court's dismissal of the death penalty hearing had been in the erroneous belief that this was required by law (in which event the trial court could consider reopening the proceeding) or had been an exercise of discretion resulting in an acquittal, to which jeopardy would attach. *State v. Daniels*, 207 Conn. 374, 542 A.2d 306 (1988) ("Daniels I").

On remand the trial court clarified that its dismissal of the death penalty phase was discretionary and reaffirmed its sentence. Once again both sides appealed to the Connecticut Supreme Court. *State v. Daniels*, 209 Conn. 225, 550 A.2d 885. The Supreme Court this time considered the contention of the defendant, put aside in the earlier hearing, that the imposition of two life sentences, one for the murder of Whipple and one for the multiple murders of Whipple and Russell, violated the double jeopardy principle by punishing him twice for Whipple's murder.

The Supreme Court ruled that there was no violation of double jeopardy. It concluded that the sentence imposed on the capital felony-multiple murder count was imposed for the lesser included offense of the murder of Russell; accordingly, the defendant was not being punished twice for the murder of Whipple.

Daniels then brought his petition for habeas corpus in the United States District Court for Connecticut, contending, as he had in the Connecticut Supreme Court, that his multiple convictions with consecutive sentences placed him twice in jeopardy for the murder of Whipple. 736 F.Supp. 1215. The State reasserted its argument that the conviction on the multiple murder count had been reduced by the trial court to the lesser included murder of Russell, adding that the Connecticut Supreme Court had so found and that its finding was binding on the federal court. 28 U.S.C. § 2254(d).

Judge Daly acknowledged the binding force of state court factual findings on

---

**1.** Daniels had also been charged with a capital felony for murder in the course of a first degree sexual assault, § 53a–54b(7) and with first degree sexual assault; the trial court found insuffi-

cient evidence of the first degree sexual assault, so that he was acquitted on those charges, although convicted on the lesser included offense of second degree sexual assault.

habeas review, unless the factual determination " 'is not fairly supported by the record.' *See, e.g., Sumner v. Mata,* 449 U.S. 539, 544–47, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1980); 28 U.S.C. § 2254(d)." Ruling on Petition for Writ of Habeas Corpus, p. 7 (App. D57). Judge Daly noted, however, that, although repeatedly requested by the prosecutor to reduce the multiple murder conviction to the lesser included offense, the sentencing judge had not done so. Under the circumstances, Judge Daly concluded that the record did not fairly support the conclusion that the sentence had been so reduced.

Judge Daly went on to consider whether under the laws of Connecticut a defendant could properly receive multiple punishments for multiple murders prosecuted under the capital felony-multiple murder statute. Reviewing the terms of the statute and the Connecticut Supreme Court's interpretation of it in *State v. Wood,* 208 Conn. 125, 545 A.2d 1026, *cert. denied,* 488 U.S. 895, 109 S.Ct. 235, 102 L.Ed.2d 225 (1988), Judge Daly concluded this was not permitted. He concluded that the conviction on the separate charge for the murder of Christine Whipple unlawfully duplicated the multiple murder conviction and directed that it be vacated.

Connecticut then moved the district court to amend its order, so as to leave the option to the sentencing court either to vacate the Whipple conviction or to expressly reduce the multiple murder conviction to a conviction for the lesser included murder of Russell. Judge Daly denied the motion. He ruled that in seeking the death sentence under the multiple murder statute, Connecticut had committed itself to an irrevocable election. That election, while providing the possibility of the more serious death penalty, precluded the possibility of multiple jail terms for the constituent murders. Although he found it anomalous that the state's election to proceed under a statute providing for a heavier sentence than available for two separate simple murder convictions should require the state to accept a lighter sentence than available for two murder convictions, Judge Daly found

this to be the meaning of the Connecticut capital felony-multiple murder statute.

## DISCUSSION

■ 1. *The State's Factual Findings.* Whether the record of the sentencing proceeding fairly supported the finding of the Connecticut Supreme Court that the sentencing court had reduced the conviction on the multiple murder charge presented a difficult question. Judge Daly gave the matter careful consideration; we conclude that his decision was both prudent and correct.

The State's argument is essentially as follows: The sentencing court stated its intention to put the defendant in jail for as long "as permitted by law;" the prosecutor explained to the court that this objective could be accomplished only by giving consecutive life sentences for the two murders, which in turn, by reason of the prescriptions of double jeopardy, could be accomplished only by reducing the multiple murder conviction to a conviction for the murder of Amy Russell; the court then sentenced Daniels to two consecutive life terms. Therefore, the State argues, the court must have sought to achieve its stated objective in the manner that would succeed in achieving it, rather than a manner that would not.

The argument is seductive but cannot prevail in these circumstances for two reasons. First, conviction was not entered for the reduced, lesser included offense of murder under § 53a–54a of the Connecticut General Statutes. Conviction was entered for the greater inclusive crime of capital felony under § 53a–54b(8). Second, the colloquy strongly suggests that in declining to reduce the capital felony to a lesser included murder, the court was acting intentionally and was not merely failing to clarify an intended reduction. Twice the prosecutor asked, over the defendant's objection, that the capital felony conviction be reduced to a conviction for the murder of Amy Russell to avoid the double jeopardy resulting from two sentences for the murder of Christine Whipple. Twice the court made clear that, in spite of the prosecutor's ..

request, it was imposing sentence for the crime of "capital felony, in violation of Section 53a–54b, Subsection 8," the multiple murder conviction. The court then asked the defense attorney "Is that the way you want it?", to which the defense attorney answered, "Yes." It seems clear that the sentencing court neither reduced the capital count nor intended to do so.

Furthermore, there are reasons why the sentencing court might have been reluctant to so reduce the charge of conviction. First, it was unclear what was the legal consequence of the jury's failure to reach a finding as to a mitigating factor. If the capital felony statute meant, as the State argued on appeal, that the State was entitled either to the death penalty or to a retrial that might ultimately have resulted in the death penalty, dismissal of the capital count in the course of reduction might have mooted that entitlement by reason of the acquittal on the capital question. Second, the sentencing court may have been unsure of the lawfulness of the reduction requested by the prosecutor. The Supreme Court of Connecticut later ruled on Daniels' own appeal that such a reduction was lawful. But no such precedent existed at the time the court passed sentence. The trial court may have been reluctant to run the risk that dismissal of the multiple murder charge, with a potentially illegal reduction to a single murder, might result in voiding both the greater and the lesser convictions. Considering all the circumstances, we cannot draw the inference argued by the state that the sentencing court intended to reduce as requested but merely failed to find the necessary words.

The entry of judgment on the capital felony rather than on the lesser included murder offense had several possible adverse consequences for the defendant. First, his criminal record includes conviction for the capital felony, an aggravated form of murder, rather than for a lesser (albeit serious) crime. Second, the court in passing sentence under § 53a–54b had no choice but to impose a life sentence. Had the conviction been reduced to murder under § 53a–54a, the court would have had the option to impose any sentence between

25 years imprisonment and life. Although there are substantial indications that the sentence would have been the same (in view of the fact that the judge declared an intention to give the longest sentence the law allows), the defendant was nonetheless entitled to be sentenced in a context that would have given the court the option to choose a lower sentence.

For all these reasons, we agree with Judge Daly that Daniels received two convictions for the murder of Whipple.

■ 2. *Double Jeopardy Analysis.* In cases involving multiple punishments for the same offense in a single proceeding, the "interest [of the Double Jeopardy Clause] is 'limited to ensuring that the total punishment did not exceed that authorized by the legislature.'" *Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989), *quoting United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989). In attempting to discern whether the legislature intended to impose multiple punishments, a court should first apply the rule of statutory construction enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). That rule states that two offenses are deemed to be the same for purposes of double jeopardy analysis unless each requires proof of a fact not required for the other. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182.

In more recent cases, the Supreme Court has made clear that the *Blockburger* test does not end the inquiry. Even if the crimes are the "same" under *Blockburger,* a legislature can nonetheless authorize cumulative punishments, but only by clearly indicating its intent to do so. *Missouri v. Hunter,* 459 U.S. 359, 365, 366–367, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). In determining the relevant legislative intent, federal courts are bound by the state courts' construction of the statutes at issue. *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981).

Because the conviction for the murder of Whipple required no element of proof that

was not present in the capital felony-multiple murder, they were the same offense under *Blockburger*, and multiple punishments could not be imposed absent a clear indication of legislative intent to do so. Notwithstanding the State's arguments, we can see no indication of legislative intent to permit multiple punishment for the capital felony and the lesser included offense. Indeed in *State v. Usry*, 205 Conn. 298, 533 A.2d 212 (1987), and *State v. Wood*, 208 Conn. 125, 545 A.2d 1026, *cert. denied*, 488 U.S. 895, 109 S.Ct. 235, 102 L.Ed.2d 225 (1988), cases where the trial court had imposed separate sentences for the capital felony and for lesser included murders, the Supreme Court of Connecticut ordered that the conviction for the lesser included murder be vacated. *Cf. State v. Chicano*, 216 Conn. 699, 584 A.2d 425 (1990). In the absence of a clearly contrary legislative intent or a holding of the Connecticut Supreme Court so construing the statute, we hold that the imposition of two convictions and sentences for the capital felony and the included murder of Whipple violated the Double Jeopardy Clause.

3. *The Remedy.* We turn to the question of remedy. Daniels contends that one of the two life sentences must be vacated. The State contends that, if the illegality is curable, the matter may be remanded to give the sentencing court the opportunity for cure.

Judge Daly found that the State's suggested remedy was not available for several reasons. Although he had no doubt that by proceeding under two separate murder charges, one for the Whipple murder, the other for Russell, the State would have been entitled to successive life sentences, the State had instead proceeded by charging a capital felony consisting of the two murders, with a separate charge for the Whipple murder. Because the Whipple murder was a lesser included offense of the capital felony, Judge Daly ruled that, under *Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985), the entry of both convictions constituted a violation of double jeopardy that could not be cured except by vacating one of the two convictions.

Further, as a matter of Connecticut law, Judge Daly ruled that the capital felony-multiple murder statute permitted only a single punishment and did not permit the reduction and consecutive sentencing sought by the State. Judge Daly believed that once the State elected to seek judgment under the capital felony, it was bound by the language of the statute that mandates *"a term* of life imprisonment" unless the defendant is "put to death." Conn. Gen.Stat. § 53a–35a(1) (1985 Supp.). Judge Daly believed that this provision of the statute "forecloses the option to seek two terms of life imprisonment on the non-barred lesser included offense of the Amy Russell murder and the Christine Whipple murder. Having once unsuccessfully proceeded under one statutory penalty theory in attempting to gain the most severe sanction possible, the prosecution could not now shift gear to another penalty theory to achieve an intermediate result, contrary to the statutory penalty sentence first proffered." Ruling on Motion to Amend Conviction, p. 8 (App. D82). With all respect, we do not agree with this part of Judge Daly's analysis.

■ Whether a capital felony-multiple murder conviction under § 53a–54b may be reduced to a single count of murder under § 53a–54a is simply a question of Connecticut law. The Supreme Court of Connecticut has, in our view, unmistakably answered that Connecticut law permits this procedure. The ruling was made in a context that could not have been more germane, as it was made with respect to these very facts on the second appeal from Daniels' conviction. The Supreme Court expressly approved "the [consecutive] imposition of one life sentence for each of [the two murders], when the state has joined a separate count of murder to a count of capital felony.... Once the [trial] court concluded that [the death penalty would not be imposed], ... it clearly had the authority to reduce the capital felony conviction to that of the lesser included offense of [a single] murder, because the defendant was at all

times fully aware of his potential liability for that offense.... [2] We therefore conclude that the court did not err in imposing two life sentences upon the defendant." *Daniels II*, 209 Conn. at 239–40, 550 A.2d 885.

■ *Ball v. United States* does not preclude such a reduction. Decisions of the Supreme Court subsequent to *Ball* make clear that a sentence or judgment which violates double jeopardy in a manner that is curable does not necessarily require dismissal of one of the offending counts. The trial court may resentence in a manner that avoids the constitutional offense. In *Morris v. Mathews*, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986), the Supreme Court ruled that a state court may, after the fact, reduce a jeopardy-barred offense to a lesser included nonbarred offense and impose sentence on it. The Supreme Court there rejected the defendant's contention that dismissal was required after entry of a double conviction if reduction of the greater inclusive count to a nonduplicative lesser included offense would avoid the double jeopardy without prejudice to the defendant. The same principles apply to this case. Reduction in this case is a permissible remedy because defendant has not demonstrated a "reasonable probability that he would not have been convicted of the non-jeopardy-barred offense absent the presence of the jeopardy-barred offense."

*Morris v. Mathews*, 475 U.S. at 247, 106 S.Ct. at 1038.[3]

In sum, although the capital felony-multiple murder conviction and the Whipple murder conviction cannot both stand without violating Daniels' double jeopardy rights, there are choices open to the Connecticut courts: among them, the sentencing court might vacate either the capital felony conviction or the conviction for the murder of Christine Whipple, leaving the other standing. Alternatively, it might reduce the capital felony conviction to a conviction for the murder of Amy Russell, leaving the Whipple murder conviction standing; the court would then be required to resentence the defendant for the Russell murder under the sentencing provision of the murder statute, Connecticut General Statute § 53a–54a, and not under the sentencing rule applicable to the capital felony, Connecticut General Statute § 53a–54b(8).[4]

### CONCLUSION

Accordingly, the order of the district court is affirmed to the extent that it granted the writ of habeas corpus and reversed insofar as it denied the State court the opportunity to cure the double jeopardy violation by resentencing. The case is remanded to the district court, to be remanded to the sentencing court with instructions to cure the double conviction for the Whip-

---

2. This ellipsis eliminates what the State considers a crucial sentence in *Daniels II*. In holding that the trial court had the authority to reduce the capital felony conviction to that of the lesser included offense of murder, the Supreme Court of Connecticut opined that "[i]t is of no moment that the trial court did not expressly explain its imposition of two life sentences as an exercise of its power with respect to lesser included crimes." *Daniels II*, 209 Conn. at 240, 550 A.2d 885. As discussed in the first section of this opinion, it was not the trial court's failure to *explain* its imposition of the two life sentences that constituted double jeopardy. It was the trial court's failure to *reduce* that violated the double jeopardy clause. *Cf. Morris v. Mathews*, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986) (*reducing* petitioner's concededly jeopardy-barred conviction for murder was an adequate remedy for the double jeopardy violation).

3. *Jones v. Thomas*, 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989), is not to the contrary. In *Thomas*, the Court acknowledged that the Double Jeopardy Clause protects against "additions to a sentence in a subsequent proceeding that upset a defendant's legitimate expectation of finality." *Thomas*, 109 S.Ct. at 2528. However, here, the resentencing of defendant would not entail the imposition of an "additional sentence, ... [but] a valid remedy for improper 'cumulative sentences imposed in a single trial.'" *Thomas*, 109 S.Ct. at 2528, *quoting Missouri v. Hunter*, 459 U.S. at 366, 103 S.Ct. at 678.

4. The state might also wish to explore a variant of the approach taken in *United States v. Aiello*, 771 F.2d 621, 632–35 (2d Cir.1985).

ple murder in any of the several ways permitted by law.