Jerry D. DANIELS, Petitioner,

v.

George BRONSON, Warden, Respondent.

Civ. No. B–89–241 (TFGD).

United States District Court, D. Connecticut.

Jan. 18, 1990.

Opinion on Motion to Amend or Correct April 23, 1990.

Joseph Bruckmann, New Haven, Conn., for petitioner.

Carolyn Longstreth, Wallingford, Conn., for respondent.

## RULING ON PETITION FOR WRIT HABEAS CORPUS

DALY, District Judge.

Jerry Daniels petitions this Court pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. He is presently incarcerated at the Connecticut Correctional Institution at Somers, Connecticut. Petitioner claims that his separate convictions and sentences for both multiple murder capital felony and for murder of one of the victims of the capital felony offense violate the fifth amendment's double jeopardy clause. After unsuccessfully asserting his double jeopardy claim in the trial proceedings, petitioner was granted certification to appeal to the Connecticut Supreme Court, which rejected his double jeopardy claim. *State v. Daniels*, 209 Conn. 225, 550 A.2d 885 (1988) (*"Daniels II"*). Accordingly, petitioner has exhausted available state remedies. *See, e.g., Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03, 104 S.Ct. 1805, 1810–11, 80 L.Ed.2d 311 (1984) (presentation of claim to highest state court satisfies exhaustion requirement); 28 U.S.C. § 2254(b) & (c).

The respondent has answered the petition and responded to the Court's order to show cause why the relief sought should not be granted. Additionally, the respondent filed and the Court has reviewed the pertinent portions of the transcript of the trial court proceedings. Finally, oral argument having been heard on the petition, this matter is now ripe for decision.

## BACKGROUND

The following excerpt from the Connecticut Supreme Court's opinion in *State v. Daniels*, 207 Conn. 374, 378–79, 542 A.2d 306 (1988) (*"Daniels I"*) describes the actions for which the petitioner stands convicted:

On June 16, 1984, the day of the murders, the victim, Christine Whipple, shared a two-bedroom apartment with Mary ... in Norwich. Christine and her three year old daughter, Amy Russell, normally slept in one bedroom, while Mary slept in the other. During May and early June, Mary had dated and had sexual relations with the defendant, but approximately one week before the day of the murders she had broken up with him.... At approximately 1 a.m., the defendant, looking for Mary, arrived at the apartment. Having been admitted by Christine, the defendant refused to comply with her request that he leave. An argument and then a physical struggle ensued. Christine broke away and ran into her bedroom, where the defendant followed her. He pulled out a knife, which he had concealed in his sock, and stabbed her several times in the chest. She fell on the bed while he continued to stab her. Amy awoke screaming, "Mommy, Mommy." The defendant grabbed the child by the neck in an attempt to strangle her and then slit her throat. Upon hearing gurgling noises from Christine, he removed her panties and had sexual intercourse with her, stabbing her again afterwards.

The facts pertaining to this petition are, with one significant exception, essentially undisputed. After trial before a three-judge panel in the Connecticut Superior Court for the Judicial District of New London, the petitioner was convicted of the murder of Christine Whipple, in violation of Conn.Gen.Stat. § 53a–54a [1], and of capital felony for the murders of both Whipple and her three-year old daughter, Amy Russell, in violation of Conn.Gen.Stat. § 53a–54b(8).[2] Petitioner was also convicted of sexual assault in the second degree in violation of Conn.Gen.Stat. § 53a–71. The

---

1. Conn.Gen.Stat. § 53a–54a provides, in pertinent part:

    "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person...."

2. Conn.Gen.Stat. § 53a–54b provides, in pertinent part:

    "A person is guilty of a capital felony who is convicted of any of the following: ... (8) murder of two or more persons at the same time or in the course of a single transaction."

prosecution sought the death penalty on the capital felony conviction pursuant to Conn.Gen.Stat. § 53a–46a. During the penalty phase, the jury deadlocked on whether the petitioner had proven the existence of a mitigating factor, an issue critical to the determination of whether the death penalty could be imposed. *See* Conn. Gen.Stat. § 53a–46a(f). The trial judge then dismissed the jury, reassembled the three-judge panel, and on March 27, 1986 imposed two consecutive life sentences for the capital felony and murder convictions and a consecutive ten-year sentence on the sexual assault conviction.

Both the petitioner and the State appealed to the Connecticut Supreme Court. The State raised issues relating to the construction and application of Connecticut's death penalty statute, Conn.Gen.Stat. § 53a–46a. Seeking to have his murder conviction set aside, the petitioner claimed that his capital felony and murder convictions and punishments violated the fifth amendment's double jeopardy clause. The Connecticut Supreme Court, sitting *en banc*, remanded the case to the trial court for an articulation of its reasons for dismissing the death penalty proceeding and imposing sentence. *Daniels I*, 207 Conn. at 400–03, 542 A.2d 306. The court expressly declined to reach petitioner's double jeopardy argument until after the trial court issued its articulation. *Id.* at 402, 542 A.2d 306.

After the trial court ruled, the Supreme Court rejected petitioner's double jeopardy claim. *Daniels II*, 209 Conn. at 238–50, 550 A.2d 885. The Supreme Court implicitly found that the trial court, also without explicitly so stating, reduced the capital felony conviction to one for the lesser included offense of the murder of Amy Russell and permissibly sentenced the petitioner to life imprisonment for that offense. *Id.* at 239–40, 550 A.2d 885 (because the defendant was fully aware of his potential liability for that murder, the trial court "clearly had the authority to reduce the capital felony conviction to that of the lesser included offense of murder....."). It also held that "[f]or punishment purposes, it was not unconstitutionally duplicitous to join this conviction with the [petitioner's]

separate conviction for the murder of Christine Whipple." *Id.*

Subsequently, on March 7, 1989, the United States Supreme Court denied petitioner's petition for writ of certiorari. *Daniels v. Connecticut*, —— U.S. ——, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989).

## DISCUSSION

A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is being held in the custody of respondent in violation of a federal right. *Engel v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Petitioner argues that the convictions and sentences for multiple murder capital felony and murder violated the double jeopardy clause's proscription that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. More specifically, he claims that the conviction and sentenced imposed on the Christine Whipple murder are barred by the double jeopardy clause's protection against "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

## A) WAIVER

■ Respondent argues that the court need not reach the merits of petitioner's claim because it was waived during the course of the trial court sentencing proceeding. A careful review of the trial court record shows that this argument is wholly without merit.

Both before and during the trial, petitioner, through counsel, moved to dismiss the murder count on double jeopardy grounds. T. at 36–27 (10/21/85). During the sentencing phase, petitioner reiterated and renewed this argument on several occasions. On each occasion, the trial court denied the relief sought.

The trial court initially sentenced petitioner to consecutive terms of imprisonment "for the rest of his natural life" on the capital felony conviction and "for the remainder of his natural life" on the mur-

der conviction. T. at 66 (3/27/86). Petitioner then immediately requested that his double jeopardy exception be noted and objected to this sentence, arguing for its amendment on the ground that the statute in effect at the time of the offense permitted only a sentence of "life imprisonment" for the crime of capital felony.[3] *Id.* at 67. The State did not object to the defense motion to amend and further requested that the trial court indicate that the sentence on the capital felony count was for the intentional murder of Amy Russell to alleviate any multiple punishment concerns. *Id.* at 67–68. Petitioner objected to this request arguing that judgment should be imposed on the crimes charged in the information. *Id.* at 68.

After listening to the State renew its request one final time, the trial court then resentenced petitioner to consecutive terms of "life imprisonment" on the capital felony and Christine Whipple murder convictions. *Id.* After imposing the life imprisonment sentence on the capital felony charge, the trial court asked defense counsel, "Is that the way ... you want it?" *Id.* Defense counsel responded affirmatively. *Id.* This response, the respondent contends, constituted a waiver of petitioner's double jeopardy claim.

The Court disagrees. The record demonstrates that the court inquired of defense counsel to see if the resentencing resolved the issue raised by his motion to amend. The defense responded, not by waiving the double jeopardy argument which had previously been rejected and to which exception had been taken and noted, but rather by affirmatively indicating that the wording of the new sentence conformed to the statutory penalty applicable to the charge of capital felony. Waiver, therefore, is not an issue in this case.[4]

**3.** Conn.Gen.Stat. § 53a–46a was amended in 1985 to require a term of life imprisonment without the possibility of release for one convicted of capital felony, unless a sentence of death is imposed. The former sentence, however, cannot·be imposed on offenses committed prior to October 1, 1985. Conn.Gen.Stat.

## B) THE STATE COURT'S FACTUAL FINDING

■ At the heart of this dispute is the Connecticut Supreme Court's finding that the trial court implicitly reduced the multiple murder capital felony conviction to the lesser included offense of the Amy Russell murder and sentenced accordingly. *Daniels II,* 209 Conn. at 239–40, 550 A.2d 885. If this factual finding was correct, then the petitioner was not subjected to multiple punishments for the same offense and his petition must be denied.

■ A court reviewing a state prisoner's habeas petition must presume that the factual findings of the state court, including an appellate court, are correct unless one of seven exceptions enumerated in 28 U.S.C. § 2254(d) applies or unless the habeas court determines after reviewing the pertinent part of the record as a whole that the factual determination at issue "is not fairly supported by the record." *See, e.g., Sumner v. Mata,* 449 U.S. 539, 544–47, 101 S.Ct. 764, 767–70, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d). If no exception applies or the state court's findings are fairly supported, then the habeas petitioner bears the burden of establishing by convincing evidence that the factual finding at issue was erroneous. *Sumner,* 449 U.S. at 550, 101 S.Ct. at 770; 28 U.S.C. § 2254(d). After careful review of the transcript of the sentencing proceeding and for the reasons set forth below, this Court concludes that the factual finding at issue here is not fairly supported by the record.

Initially, in the course of arguing against the defense's motion to reconsider the denial of the motion to dismiss the Christine Whipple murder count on double jeopardy grounds, the State indicated that it intended to argue that the petitioner be sentenced for the Christine Whipple murder conviction and for the intentional murder of Amy Russell, as a lesser included offense of

§ 53a–35c. Prior to this amendment, a term of life imprisonment meant "a definite sentence of sixty years." Conn.Gen.Stat. § 53a–35b.

**4.** Nor was it an issue that merited any discussion in the *Daniels II* opinion.

multiple murder capital felony. T. at 11–15 (3/27/86). Later, during its sentencing summation, the State conceded that intentional murder was a lesser included offense of multiple murder capital felony. *Id.* at 56. In recognition of this fact (and without conceding that to sentence on both the capital felony and murder convictions would be unconstitutional), the State again argued for reduction of the capital felony conviction and the imposition of consecutive life sentences on two counts of intentional murder. *Id.* at 56–58.

The trial court then sentenced the petitioner to imprisonment for the rest of his natural life on the capital felony and Christine Whipple murder convictions. *Id.* at 66. At this point, the previously noted colloquy relating to whether the petitioner could legally be sentenced to imprisonment for the rest of his natural life began. In the course of this argument, defense counsel again noted his exception to the sentence on the Christine Whipple murder. *Id.* at 67. Responding in kind, the State requested that the trial court indicate "that the sentence on the capital felony count is for the intentional murder of Amy Russell so there be no misunderstanding that he is not being sentenced twice for the death of Christine Whipple." *Id.* at 67–68. Defense counsel objected to this request arguing that the trial court was duty bound "to impose judgment on [the] information." *Id.* at 68. Rather than addressing the State's request, the trial court resentenced the petitioner stating that it was "sentencing him [to life imprisonment] on capital felony" and to life imprisonment for the murder of Christine Whipple. *Id.* at 68–69. Judgment then entered on that sentence.

This record does not fairly support the Connecticut Supreme Court's finding that the petitioner's multiple murder capital felony conviction was reduced to the lesser included Amy Russell murder and that he was sentenced to life imprisonment on each separate murder conviction. Though the trial court was asked three times to take that course of action, it ignored these requests, neither explicitly granting nor denying them. Even after stating its intention to incarcerate the petitioner "for as long as the law permits" in propounding its initial sentence, *id.* at 66, the trial court ignored the State's request to modify the sentence to state expressly that petitioner was being sentenced, in part, for the lesser included murder of Amy Russell. *Id.* at 68–69. In short, the record does not support the Connecticut Supreme Court's factual finding. Therefore, the presumption of correctness that normally attaches to such a finding does not govern here. Instead, the record supports what the trial court explicitly stated—that the petitioner was sentenced to life imprisonment for both the multiple murder capital felony and for the murder of Christine Whipple.

## C) DOUBLE JEOPARDY ANALYSIS

■ To determine if the petitioner was unconstitutionally subjected to multiple punishments for the same offense, a court would first normally apply the rule of statutory construction enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). That rule states that two offenses are deemed to be the same for purposes of double jeopardy analysis unless each involves proof of a fact different from the other. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. In this case, however, respondent concedes that capital felony multiple murder and the lesser included Christine Whipple murder charge are the same under the *Blockburger* test.

The petitioner's conviction of two offenses deemed the same under *Blockburger* is, in and of itself, of little significance. This is because "[w]ith respect to cumulative sentences imposed in a single trial, the double jeopardy clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). Stated another way:

[T]he question of what punishments are constitutionally permissible is no different from the question of what punishments the [legislature] intended to be imposed. *Where [the legislature] intended ... to impose multiple punish-*

ments, imposition of such sentences does not violate the Constitution.

*Id.* (adding emphasis and quoting *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981)). In making the determination of legislative intent, this Court is bound by the Connecticut Supreme Court's construction of the statutes at issue. *Id.*

In two recent cases, the Connecticut Supreme Court addressed, in two somewhat different contexts, the question of whether the legislature intended to impose multiple punishments for capital felony and for one or both of the murders underlying the capital felony conviction. *See State v. Wood,* 208 Conn. 125, 545 A.2d 1026, *cert. denied,* —— U.S. ——, 109 S.Ct. 235, 102 L.Ed.2d 225 (1988); *State v. Usry,* 205 Conn. 298, 533 A.2d 212 (1987). In *Usry,* the defendant was convicted of capital felony [5], felony murder, and murder. *Id.* at 299–300, 533 A.2d 212. The trial court sentenced him to three concurrent life terms and the defendant appealed to the Connecticut Supreme Court seeking, *inter alia,* acquittal of the murder conviction on the grounds that it was a lesser included offense of the capital felony charge and conviction. *Id.* at 300, 533 A.2d 212. Though denying Usry's request for acquittal, the court held that the trial court erred in rendering judgment on both convictions and remanded with directions to set aside the murder conviction.[6] *Id.* at 318, 533 A.2d 212.

More recently in *State v. Wood,* the defendant was convicted on three counts of murder and one count of capital felony in connection with the deaths of four persons. 208 Conn. at 127, 545 A.2d 1026. Wood killed four persons, but the jury found him guilty but not criminally responsible for the fourth murder charge. *Id.* at 127, 545 A.2d

1026; *see* Conn.Gen.Stat. § 53a–13. Accordingly, he was not sentenced on that offense. Two of the remaining murder convictions were the predicates for the multiple murder capital felony offense.[7] *Id.* at 145, 545 A.2d 1026. The trial court sentenced Wood to three concurrent terms of sixty years on each murder conviction and to a consecutive sentence of sixty years on the capital felony conviction. *Id.* at 128 n. 4, 545 A.2d 1026. On appeal to the Connecticut Supreme Court, Wood argued that the trial court erred in rendering judgment on the two underlying murder convictions comprising the basis for the multiple murder capital felony conviction. *Id.* at 145, 545 A.2d 1026. The State conceded that Wood was correct and the Connecticut Supreme Court agreed. *Id.* The court remanded the case to the trial court directing that the judgment on the two murder convictions underlying the capital felony conviction be vacated. *Id.*

The respondent attempts to distinguish these two cases by arguing that in both instances the defendants were subjected to multiple punishments by the trial court for essentially the same offense. This case differs, respondent contends, because petitioner was sentenced on the lesser included Amy Russell murder and was accordingly sentenced to one term of life imprisonment for each victim. As noted previously, the record does not bear this out. Moreover, respondent's contention that *Wood* stands for the proposition that a defendant convicted of capital felony and not sentenced to death may be sentenced to as many terms of life imprisonment as there are victims is contrary to the holding of that case. In holding that "[i]t is a violation of the double jeopardy clause of the fifth amendment to impose punishment for both the multiple murder capital felony and the

**5.** Usry was convicted of capital felony for "murder committed in the course of the commission of sexual assault in the first degree...." Conn. Gen.Stat. § 53a–54b(7).

**6.** Somewhat curiously, Usry apparently did not make a jeopardy argument with respect to his felony murder conviction and sentence. The Connecticut Supreme Court's opinion does not discuss this issue. Perhaps this is so because the underlying felony charged in the felony

murder count was burglary. If so, then the felony murder and capital felony sexual assault crimes are not the same offenses under *Blockburger.*

**7.** The other murder conviction was distinct, apparently both in terms of time and location, from those comprising the capital felony charge. *Id.* at 128, 545 A.2d 1026. Therefore, it could not be challenged in conjunction with Wood's double jeopardy argument.

murders that constitute the lesser included offense", the Connecticut Supreme Court rejected the argument petitioner now makes. *Id.* at 145, 545 A.2d 1026. Furthermore, *Wood's* resulting single term of life imprisonment for capital felony, in spite of the fact that there were two murder victims forming the basis for that offense, also weighs against respondent's argument.[8] *Id.*

Primarily because of *Wood's* implicit determination that the legislature did not intend to impose multiple punishments for multiple murder capital felony and for one of the murders underlying the former offense, this Court need not undertake any further analysis of legislative intent. *See Hunter,* 459 U.S. at 368, 103 S.Ct. at 679; *see also O'Brien v. Skinner,* 414 U.S. 524, 531, 94 S.Ct. 740, 744, 38 L.Ed.2d 702 (1974). Petitioner, here, was unconstitutionally subjected to multiple punishments. In accordance with the *Wood,* 208 Conn. at 145, 545 A.2d 1026, the judgment of conviction for the underlying murder of Christine Whipple must be vacated.

## CONCLUSION

Petitioner's petition for writ of habeas corpus is GRANTED. This matter is hereby remanded to the trial court for vacation of the judgment of conviction for the murder of Christine Whipple.

SO ORDERED.

## ON MOTION TO AMEND OR CORRECT

On January 18, 1990, this Court held that the convictions and sentences imposed upon Jerry Daniels ("Daniels") for multiple murder capital felony and for murder of one of the victims of the capital felony offense violated the fifth amendment's double jeopardy clause. See page 1216.[1] Accordingly, the Court granted the petitioner's writ of habeas corpus and remedied the violation by remanding this case to the trial court for vacation of the judgment of conviction for the charged murder offense. *Id.* at 1221. In formulating the remedy for this constitutional violation, this Court followed the example set by the Connecticut Supreme Court in *State v. Wood,* 208 Conn. 125, 145, 545 A.2d 1026, *cert. denied,* —— U.S. ——, 109 S.Ct. 235, 102 L.Ed.2d 225 (1988).

■ The respondent has now moved this Court to amend or correct its judgment to impose a different remedy for the constitutional violation. Specifically, the respondent asks the Court to remand with the direction that the state trial court exercise its discretion either to vacate the Christine Whipple murder conviction, leaving intact the capital felony conviction and corresponding sentence as this Court originally directed it to do, or to reduce the capital felony conviction to the allegedly non-jeopardy barred lesser included offense of the Amy Russell murder and sentence accordingly, leaving the other convictions and sentences, including the term of life imprisonment imposed for the Christine Whipple murder conviction, to stand as previously imposed.

## DISCUSSION

In *Morris v. Mathews,* 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986), the United States Supreme Court held that multiple punishment double jeopardy violations can be cured in some instances. In *Mathews,* the defendant was initially convicted and sentenced for aggravated robbery. *Id.* at 240, 106 S.Ct. at 1034. Shortly thereafter, when it was discovered that his accomplice had not committed suicide just before being

---

**8.** The petitioner, respondent, and this Court agree that the *Daniels II* court implicitly found that the trial court reduced the capital felony conviction to the Amy Russell murder offense. That opinion can also be read, however, to state *simply* that a trial court has such power and that the Connecticut Supreme Court may exercise it in the event the trial court fails to do so. This Court rejects such an interpretation because of the inconsistency it creates between *Wood* and

*Daniels II.* In the former case, the court ruled that sentence should be imposed on the capital felony offense alone, whereas in the latter it held that sentence should be imposed on the underlying murder offenses.

**1.** In the discussion that follows, familiarity with the Court's prior ruling granting the petition for writ of habeas corpus is presumed.

apprehended, but rather had been murdered, the defendant was subsequently charged with, convicted of, and sentenced for aggravated murder.[2] *Id.* at 241–42, 106 S.Ct. at 1035–36. After the defendant asserted a double jeopardy claim in direct and collateral attacks on the judgment, the Supreme Court granted certiorari to decide whether the "state appellate court provided an adequate remedy for a violation of the Double Jeopardy Clause of the Fifth Amendment by modifying the jeopardy-barred [aggravated murder] conviction to that of a lesser included offense [nonfelony murder] that is not jeopardy barred." *Id.* at 238, 106 S.Ct. at 1034.

The Supreme Court held that because the aggravated murder conviction necessarily entailed a finding of guilt on the lesser included offense of nonfelony murder and because nonfelony murder was not the "same offense"[3] as aggravated robbery, the double jeopardy clause would not have barred a successive prosecution for nonfelony murder. *Id.* at 246–47, 106 S.Ct. at 1037–38. Therefore, the double jeopardy violation was permissibly cured by resentencing the defendant on the nonfelony murder, unless the defendant demonstrated that he was prejudiced by the admission of evidence tending to prove the jeopardy-barred offense that would not have been admissible to prove the nonbarred offense, in which case a new trial must follow. *Id.*

While on its face *Mathews* is both factually and legally distinguishable from the case at bar, its scope was extended by the Supreme Court in *Jones v. Thomas,* — U.S. ——, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). In *Thomas*, the defendant was convicted of and sentenced for both attempted robbery and felony murder for his role in the holdup of an auto parts store. *Id.* 109 S.Ct. at 2524. Subsequent to the conviction and imposition of sentence, the Missouri Supreme Court held that the state legislature did not intend to allow multiple pun-

ishments for both felony murder and the underlying felony. *Id.* To remedy this double jeopardy violation, the Missouri Court of Appeals vacated the defendant's robbery conviction and sentence and credited the time served on that offense against the life sentence imposed for felony murder. After habeas relief was sought in the lower federal courts, the Supreme Court granted certiorari to consider whether, consistent with double jeopardy principles, the defendant could be made to serve the life sentence after already having completed serving the sentence imposed on the lesser included offense. *Id.* 109 S.Ct. at 2524–25.

Although the Court answered that question affirmatively, *Thomas'* express holding does not address the question presented here. In *dicta,* however, the Court stated that though the trial court fully vindicated the defendant's double jeopardy rights by vacating the conviction and sentence on the lesser included robbery offense, the double jeopardy violation could have been cured by following the rule laid down in *Mathews. Id.* 109 S.Ct. at 2527 n. 3. Specifically, the Court stated that because the jury's felony murder guilty verdict necessarily included a determination that the defendant committed the nonbarred, nonfelony murder (not the "same offense" as attempted robbery), the state court could also have cured the double jeopardy violation by reducing the felony murder conviction to the nonbarred nonfelony murder and resentencing on that offense. *Id.* Respondent argues that this same analysis should apply here.

The Court disagrees. This case is factually distinguishable from *Mathews* and *Thomas* in at least one very significant respect. In *Mathews*, the defendant was subjected to two successive prosecutions, first for aggravated robbery, and then for aggravated murder. 475 U.S. at 240–41, 106 S.Ct. at 1034–35. In *Thomas*, the de-

---

**2.** Apparently, the defendant murdered his accomplice after both were surrounded by the police at a farmhouse, so he could claim that the accomplice had kidnapped him and that he was not a voluntary participant in the robbery. *Id.* at 239–41, 106 S.Ct. at 1034–35.

**3.** As discussed in the Court's prior Ruling, the reference to "same offense" means an offense deemed to be the same for purposes of double jeopardy analysis within the rule enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See* page 1219.

fendant was prosecuted in the course of one proceeding for both attempted robbery and felony murder for killing during the commission of that robbery. 109 S.Ct. at 2524. However, at the time of the prosecution and conviction, the Missouri Court of Appeals had not yet determined that the state legislature had not intended to allow separate punishments under the felony murder statute. That determination was made some seven years later. *Id.* at 2524 (citing *State v. Morgan,* 612 S.W.2d 1 (Mo. 1981) (en banc) and *State v. Olds,* 603 S.W.2d 501 (Mo.1980) (en banc)). Accordingly, in neither *Mathews* nor *Thomas* could the trial court have taken the course of action which could have been taken here. More specifically, as stated in *State v. Flynn,* 14 Conn.App. 10, 20, 539 A.2d 1005, *cert. denied,* —— U.S. ——, 109 S.Ct. 226, 102 L.Ed.2d 217 (1988), if " 'the trial court ... treated the charges ... as greater and lesser offenses, ... it would have made it unnecessary ... for the jury to consider the lesser offense after the greater. Double jeopardy would have been precluded.' " (citing *State v. Williams,* 12 Conn.App. 225, 232–33, 530 A.2d 627 (1987)). Though the liability and penalty phases of this case were ultimately decided by the trial court rather than the jury, the same reasoning applies. Because the Christine Whipple murder was a lesser included offense of capital felony, upon convicting and sentencing for capital felony, the trial court should have vacated the murder conviction. *See Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) (holding that while the government may permissibly pursue a multiple count-indictment for the "same offense", even though the legislature did not intend that multiple punishments be imposed for that offense, the district court should enter judgment upon only one of the statutory offenses when the jury returns guilty verdicts on both counts). In *Mathews* and *Thomas* the trial courts did not have the option discussed in *Ball* and the defendants in both instances were ultimately subject to further prosecution for nonjeopardy barred offenses after they were initially convicted of the lesser offenses of which they were

accused. *See Thomas,* 109 S.Ct. at 2527 n. 3 (noting that the defendant could have been punished for the offense of nonfelony murder either by reducing the felony murder conviction to its lesser included offense *or* by holding a second trial on the lesser included offense); *see also Mathews,* 475 U.S. at 244, 106 S.Ct. at 1036 (noting that the defendant could have been retried for nonbarred lesser included offense). Here, once petitioner was convicted of capital felony additional intentional murder prosecutions would have been jeopardy barred. In light of this analysis, respondent's contention concerning the applicability of the rule enunciated in *Mathews* and further developed in *Thomas'* dicta, is misplaced.

Additionally, petitioner was charged with, convicted of, and sentenced for multiple murder capital felony as well as for one of the two murders comprising the predicates for the capital felony offense. In charging the petitioner with the former offense, the prosecution elected to try to have the petitioner put to death, as permitted by Conn.Gen.Stat. § 53a–46a. By pursuing that option, the prosecution decided to forego separately charging petitioner with two counts of intentional murder, Conn.Gen.Stat. § 53a–54a. This decision was extremely significant, in the context of this case, because of the differing penalties prescribed as punishment for such acts.

In 1984, at the time the petitioner committed the heinous acts in question, the legislature had provided that one convicted of capital felony shall be sentenced to "a term of life unless a sentence of death is imposed in accordance with section 53a–46a...." Conn.Gen.Stat. § 53a–35a(1) (1985 Supp.). When, as in this case, a death sentence was not imposed, the convict was then to be sentenced to life imprisonment, defined by the legislature as a "definite sentence of sixty years." Conn. Gen.Stat. § 53a–35b (1985 Supp.).

In 1985 and 1986, the applicable penalty provisions were changed. As a result of these changes, a person convicted of multiple murder capital felony and not sentenced to death was to be sentenced to "life imprisonment without the possibility of re-

lease ... for the remainder of the defendant's natural life." Conn.Gen.Stat. § 53a–35b (1985); Conn.Gen.Stat. § 53a–46a(f) (1985). The legislature also explicitly stated that "[t]he sentence of life imprisonment without the possibility of release shall not be available as a sentence for an offense committed prior to October 1, 1985." Conn.Gen.Stat. § 53a–35c. Petitioner committed the acts in question on June 16, 1984.

Therefore, on his conviction for multiple murder capital felony, he could either have been sentenced to death or to life imprisonment for a definite term of sixty years. If petitioner had instead been prosecuted and convicted on two counts of intentional murder he could have been sentenced to serve up to sixty years imprisonment for each murder. *See* Conn.Gen.Stat. § 53a–35a(2) (1985 Supp.); Conn.Gen.Stat. § 53a–35b (1985 Supp.). Before the legislature amended the applicable penalties, therefore, one convicted of multiple murder capital felony and not sentenced to death could be subjected to less jail time (one term of sixty years) than another convicted of two counts of intentional murder (two terms of sixty years). This anomaly, as evidenced by the testimony of one Assistant State's Attorney, provided the impetus for the legislative amendments discussed above.

> In this bill now, you've got the situation where you now provide for life imprisonment, meaning life imprisonment. I was called by the State Attorney down in Stamford. He has a case, a fellow goes out, shoots his ex-wife and her boyfriend. That's all. You've got a problem. If you charge capital felony, [sic] murder and you don't get the death penalty, you get one sixty[-]year term. If you don't charge capital felony murder and you get a conviction on both the murders you get

one hundred and twenty years. That's another problem. You've just got to make that choice. He can lose sixty years by not getting the death penalty in that case.

Conn. Joint Standing Comm. Hearings, Judiciary, Pt. 5, 1985 Sess. 1419 (remarks of Herbert Appleton, Assistant State's Attorney commenting on the House bill which became 1985 Public Act 85–366).

This problem confronted the prosecution in this case. They elected to charge the petitioner with multiple murder capital felony and the intentional murder of Christine Whipple. After the three-judge panel returned verdicts of guilty on both these counts, the prosecution elected to pursue the death penalty in accordance with the capital felony penalty provisions, instead of the result now sought by respondent. Once this course of action was taken, the language of the capital felony statute cited earlier mandates that "a term of life imprisonment" be imposed for that crime unless the convict is sentenced to death. Conn.Gen.Stat. § 53a–35a(1) (1985 Supp.). This language forecloses the option to seek two terms of life imprisonment on the non-barred lesser included offense of the Amy Russell murder and on the Christine Whipple murder. Having once unsuccessfully proceeded under one statutory penalty theory in attempting to gain the most severe sanction possible, the prosecution cannot now shift gears to another penalty theory to achieve an intermediate result, contrary to the statutory penalty scheme first proffered.[4] Not sentenced to death for the multiple murder capital felony offense he committed in June 1984, petitioner correctly claims that the statute permits only one sixty-year term of life imprisonment for that offense.[5] The trial court permissibly sentenced the petitioner on this conviction.

4. In dicta, in its prior ruling this Court stated that if the trial court had in fact reduced the multiple murder capital felony to the lesser included Amy Russell murder the sentence would not have violated the double jeopardy clause's protection against multiple punishments. See page 1218. The Court need not have reached that question and such statement in no way implied any position concerning the statutory scheme discussed in this ruling. The validity of

such dicta, furthermore, is called into question by the Court's analysis of *Mathews* and *Thomas* also undertaken in this Ruling.

5. In arguing for a different result, the respondent proposes an outcome that is akin to a second prosecution for the same offense after conviction. *Cf. United States v. Halper,* —— U.S. ——, 109 S.Ct. 1892, 1903 n. 10, 104 L.Ed.2d 487 (1989) ("when the Government has already im-

Respondent attacks this analysis in several ways. First, he argues that "common sense" indicates that "the legislature did not intend to require the state to choose between the death penalty and a shorter term of imprisonment than can be imposed in non-capital cases involving multiple homicides." Resp.Mem. at 13 (10/13/89). While this argument is not without appeal, it ignores the clear penalty provisions of the capital felony statute at the time of petitioner's offense. As opposed to *Thomas'* statement that "[i]t cannot be suggested seriously that the legislature intended an attempted robbery conviction to suffice as an alternative sanction for murder", the statutory scheme enacted by the legislature requires the result presented here. Furthermore, the imposition of a single sixty-year sentence for multiple murder capital felony, when the state is unable to obtain the death penalty, is very different from the result decried in *Thomas*.

Respondent also argues that, in connection with the State's felony murder and arson murder statutes, *see* Conn.Gen.Stat. §§ 53a–54c & 54d, the Connecticut Supreme Court has stated:

> A fundamental purpose of the criminal law is to protect individual citizens from the criminal conduct of another. People are neither fungible nor amorphous. Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore, when two or more persons are the victims of a single episode there are as many offenses as there are victims. [citations omitted].

*State v. Couture*, 194 Conn. 530, 565–66, 482 A.2d 300 (1984), *cert. denied*, 469 U.S. 1192, 105 S.Ct. 967, 83 L.Ed.2d 971 (1985) (rejecting double jeopardy challenge to imposition of two consecutive life sentences imposed for the felony murder of two victims of the same robbery); *accord State v.*

*Madera*, 198 Conn. 92, 110, 503 A.2d 136 (1985) (rejecting claim that imposition of two consecutive sentences for a single act of arson that resulted in the deaths of multiple victims violated double jeopardy clause). While this Court agrees with the rationale underlying the quoted passage, such reasoning is inapplicable here because of the differences between the felony and arson murder statutes and the multiple murder capital felony statute. The statutes discussed in *Couture* and *Madera* provide that a defendant is guilty of felony and arson murder, assuming the other statutory predicates have been met, when a "death of a person" results. Conn.Gen. Stat. §§ 53a–54c & 53a–54d. The Connecticut Supreme Court inferred from this portion of the statutory language a legislative intent to impose separate sentences for each homicide from felony or arson murder and held that the multiple sentences handed down in those cases were permissible for that reason. *Madera*, 198 Conn. at 109–110, 503 A.2d 136; *Couture*, 194 Conn. at 565–66, 482 A.2d 300.

The capital felony statute uses different language, providing, in pertinent part, that "[a] person is guilty of capital felony who is convicted of any of the following: ... (8) murder of two or more persons at the same time or in course of a single transaction." Conn.Gen.Stat. § 53a–54b. Also, one who commits capital felony faces the sanction of death. In light of these differences, these cases do not support respondent's claim that multiple life sentences, whether pursuant to the capital felony statute or the intentional murder statute, are permissible under the peculiar circumstances of this case.

Respondent also asserts that the legislature's subsequent statutory amendment, requiring life imprisonment without the possibility of release in cases in which death is not imposed, further indicates an

---

posed a criminal penalty and seeks to impose additional punishment in a second proceeding, the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding"); *see also Arizona v. Rumsey*, 467 U.S. 203,

104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (holding that given trial-like characteristics of sentencing proceeding, an initial life sentence operates as an acquittal of the factual findings necessary to impose the death penalty, even after life sentence has been set aside on appeal).

intent to punish one convicted of capital felony to the fullest extent of the law in the manner contemplated by the prosecution in this case. Rather than supporting his contention, this argument detracts from it. If anything, the 1985 amendment of the penalty provision, as shown by the hearing testimony discussed earlier, evinces an intent to foreclose the situation presented here. By requiring that a capital felon not sentenced to death be imprisoned for the rest of his or her natural life, the amendment does away with the need for a prosecutor to determine whether to charge an individual with multiple counts of intentional murder in the hope of obtaining a longer prison term (as opposed to capital felony where the death penalty is not imposed) or to proceed with a capital felony charge with the aim of attaining the death penalty.[6]

For all these reasons, the Court rejects the respondent's contention that *Mathews* and *Thomas* provide an alternative, constitutionally permissible result available to the trial court on remand. Where, as here, the prosecution elected to and unsuccessfully pursued the harshest sanction possible for the crime of capital felony, the Court holds that the petitioner is entitled to be sentenced for that crime in accordance with the statute. Though an apparent statutory anomaly dictates that the defendant's period of incarceration will be less than what it might have been, the law requires nothing less.

The remaining question is whether the conviction and concurrent sixty-year sentence imposed by the trial court for the Christine Whipple murder may constitutionally stand alongside the capital felony sentence. For the reasons stated in this Court's prior ruling, see pages 1219–21 the answer is no.

## CONCLUSION

For all the reasons stated herein, the respondent's motion to amend this Court's ruling of January 18, 1990 is GRANTED. The relief sought by the respondent is,

however, DENIED. This matter is hereby remanded to the trial court for the vacation of the judgment of conviction for the murder of Christine Whipple. Petitioner's remaining life sentence for capital felony and consecutive ten-year sentence for sexual assault remain in effect as imposed by the trial court.

SO ORDERED.

---

**6.** As noted previously, however, this amendment applies only to those crimes committed on or after October 1, 1985. *See* Conn.Gen.Stat. § 53a–35c.