******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

D'AURIA, J., concurring in the judgment. As the court's per curiam opinion indicates, all panel members in the present case agree to affirm the judgment of conviction of the defendant, Willie McFarland: six members concur in three separate opinions. My own opinion is a concurrence in name only. I disagree with nearly all of the reasoning of the other two concurring opinions, authored by Justices Ecker and Alexander, which both accept the defendant's request to create a new balancing test under the Connecticut constitution, aimed at more broadly protecting a defendant's due process right against unreasonable prearrest delay. Unlike the other concurring justices, I am not convinced that the state constitution affords greater protection from prearrest delays than does the federal constitution. The balancing test that the other concurrences adopt might have surface appeal, but the details and mechanics of how that test works create myriad problems for defendants, the state, and trial court judges. I would continue to apply the two-pronged test that the United States Supreme Court created as a matter of federal constitutional law to react to state action aimed at disadvantaging defendants, which this court, nine federal circuit courts, and thirty states' courts have consistently applied for fifty years.

Although I certainly agree with Justice Alexander that we must conduct a "more rigorous analysis than simply tallying holdings" of other jurisdictions; *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 427, 119 A.3d 462 (2015); I do not find persuasive the opinions of the minority of jurisdictions on which the two other concurrences rely or the two concurrences themselves. I find no compelling reason to depart from our consistent application of the test that a majority of jurisdictions apply, and I disagree with both concurrences, which announce a balancing test while providing almost no guidance to trial courts about how to fix what both concurrences view as broken.

## I

As an initial matter, I do not understand why the rest of this court has concluded that it is necessary to address the need for a balancing test under our state constitution when the state constitutional test yields the defendant no relief in this case. I am aware that my view on the matter is suspect because I disagree with the balancing test that the court announces today. But, in my opinion, we should wait for a case in which the application of the new balancing test would make a difference to the defendant. Because all members of the panel agree that the defendant cannot prevail on any test compelled by the due process clauses of article first, §§ 8 and 9, of our state constitution, it would comport with the doctrine of constitutional avoidance for us, at most, to "assum[e] without deciding," as my concurring colleagues say, that the balancing test the trial court applied or that the defendant urges on appeal, without actually holding as a constitutional matter, that it does apply. See, e.g., *State* v. *Haynes*, 352 Conn. 236, 260, 336 A.3d 1139 (2025); *State* v. *Sayles*, 348 Conn. 669, 679, 310 A.3d 929 (2024). We have made quite a few of these assumptions recently in our cases, including even when a constitutional issue was not in play. See, e.g., *State* v. *Myers*, 352 Conn. 770, 779, 338 A.3d 1088 (2025); *State* v. *James K.*, 347 Conn. 648, 662, 299 A.3d 243 (2023); *State* v. *Lanier*, 347 Conn. 179, 193, 296 A.3d 770 (2023).[1]

## II

Until today, this court for a generation has consistently agreed with and applied the two-pronged test

---

[1] Justice Alexander goes halfway in by "[a]ssuming without deciding that the defendant has established actual and substantial prejudice in this case" before turning to the state's justification for delay. As I will explain in part IV of this opinion, because a majority of this court has determined that it is prudent in the present case to announce this state constitutional balancing test, this is a missed opportunity to provide our trial courts with *some* idea of what might satisfy the prejudice side of the balancing.

articulated by the United States Supreme Court in *United States* v. *Marion*, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971), and *United States* v. *Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977), to assess defendants' prearrest delay claims on federal due process grounds. This test requires defendants to establish "both that actual substantial prejudice resulted from the delay *and* that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant." (Emphasis in original; internal quotation marks omitted.) *State* v. *Roger B.*, 297 Conn. 607, 614, 999 A.2d 752 (2010); see also *State* v. *Robinson*, 213 Conn. 243, 248, 567 A.2d 1173 (1989), overruled in part on other grounds by *State* v. *Colon*, 257 Conn. 587, 778 A.2d 875 (2001); *State* v. *John*, 210 Conn. 652, 685–86, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989), and cert. denied sub nom. *Seebeck* v. *Connecticut*, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); *State* v. *Littlejohn*, 199 Conn. 631, 646, 508 A.2d 1376 (1986); *State* v. *Gaston*, 198 Conn. 435, 445, 503 A.2d 594 (1986); *State* v. *Morrill*, 197 Conn. 507, 522, 498 A.2d 76 (1985); *State* v. *Carrione*, 188 Conn. 681, 693–94, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983); *State* v. *Echols*, 170 Conn. 11, 16–17, 364 A.2d 225 (1975).

In *Marion*, the court recognized that statutes of limitations are legislatively enacted limits on prosecutorial delay that provide "predictability" and are "the primary guarantee against bringing overly stale criminal charges." (Internal quotation marks omitted.) *United States* v. *Marion*, supra, 404 U.S. 322. Nevertheless, the court stated that a "statute of limitations does not fully define [a defendant's] rights with respect to the events occurring prior to indictment" and held that the federal due process clause "would require dismissal of the indictment if it were shown at trial that the [preindict-

ment] delay . . . caused substantial prejudice to [a defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." Id., 324.

Later, in *Lovasco*, the court clarified that the federal due process clause "has a limited role to play in protecting against oppressive delay," requiring proof both that a defendant suffered prejudice by the delay and that the reasons for the delay were unjustifiable. *United States* v. *Lovasco*, supra, 431 U.S. 789–90. The court held that delay caused by the government's investigation may be justifiable because, "[r]ather than deviating from elementary standards of fair play and decency, a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." (Internal quotation marks omitted.) Id., 795. The court then concluded that, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Id., 796; see also *United States* v. *Gouveia*, 467 U.S. 180, 192, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984) (describing *Lovasco* and *Marion* test as requiring "dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the [g]overnment's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense").

The court in *Lovasco* articulated meaningful policy reasons in support of its two-pronged approach. First, and principally, the court recognized that it is "undesirable" to adopt a rule that "would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried. These costs are by no means insubstantial since

. . . a formal accusation may interfere with the defendant's liberty . . . disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. . . . From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited. And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that prove to be insubstantial, or that involve only some of the responsible parties or some of the criminal acts. Thus, no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *United States* v. *Lovasco*, supra, 431 U.S. 791–92.

The court articulated three other compelling reasons supporting its two-pronged test. "First, compelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act. In some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice. In other cases, the prosecutor would be able to obtain additional indictments despite an early prosecution, but the necessary result would be multiple trials involving a single set of facts. Such trials place needless burdens on defendants, law enforcement officials, and courts.

"Second, insisting on immediate prosecution once sufficient evidence is developed to obtain a conviction would pressure prosecutors into resolving doubtful cases in favor of early—and possibly unwarranted—prosecutions. The determination of when the evidence available to the prosecution is sufficient to obtain a conviction is seldom clear-cut, and reasonable persons often will reach conflicting conclusions. . . . The decision whether to prosecute [sometimes] require[s] a necessarily subjective evaluation of the strength of the circumstantial evidence available and the credibility of [the defendant's] denial. Even if a prosecutor concluded that the case was weak and further investigation appropriate, he would have no assurance that a reviewing court would agree. To avoid the risk that a subsequent indictment would be dismissed for preindictment delay, the prosecutor might feel constrained to file premature charges, with all the disadvantages that would entail.

"Finally, requiring the [g]overnment to make charging decisions immediately upon assembling evidence sufficient to establish guilt would preclude the [g]overnment from giving full consideration to the desirability of not prosecuting in particular cases. The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the [g]overnment's case, in order to determine whether prosecution would be in the public interest. Prosecutors often need more information than proof of a suspect's guilt, therefore, before deciding whether to seek an indictment. . . . Requiring prosecution once the evidence of guilt is clear, however, could prevent a prosecutor from awaiting the information necessary for such a decision." (Footnotes omitted.) Id., 792–95.

Even if the other concurrences in the present case disclaim that their rule is intended to require prosecutors to bring charges as soon as possible, as I will

explain in greater detail, I am not persuaded that we should apply a different test as a matter of state constitutional law. The federal two-pronged rule allows prosecutors the necessary time to investigate their cases, while at the same time prohibiting them from delaying arrest to obtain an advantage over the defendant by the passage of time. If a defendant can prove that he is substantially prejudiced by that unjustifiable delay, then the court should dismiss the prosecution.

### III

The defendant has convinced a majority of this court to discard this precedent and implement a new balancing test forged under *State* v. *Geisler*, 222 Conn. 672, 685–86, 610 A.2d 1225 (1992). I disagree with both of the other concurrences that the *Geisler* factors[2] support this dramatic change in our law. Beginning with the first five *Geisler* factors—constitutional text, Connecticut case law, federal case law, other states' case law, and historical insights—I would conclude that none favors construing our due process clauses to demand the level of judicial scrutiny of the efforts of police and prosecutors that a majority of this court holds that our state's courts must now undertake. Finally, I conclude, as matter of our state's public policy, that the rule announced today does a good deal more harm than good.

### A

First, in my view, no text or constitutional history supports a different rule under our state constitution.

---

[2] When determining the contours of the protections provided by our state constitution, this court examines "(1) the text of the relevant constitutional provisions; (2) related Connecticut precedents; (3) persuasive federal precedents; (4) persuasive precedents of other state courts; (5) historical insights into the intent of [the] constitutional [framers]; and (6) contemporary understandings of applicable economic and sociological norms [otherwise described as public policies]." (Internal quotation marks omitted.) *State* v. *Langston*, 346 Conn. 605, 625, 294 A.3d 1002 (2023), cert. denied,      U.S.      , 144 S. Ct. 698, 217 L. Ed. 2d 391 (2024).

Unlike Justice Ecker, I cannot conclude, as a textual or historical matter, that our due process clauses manifest any intent to provide broader protection from prearrest delay than does their federal counterparts. This court has often observed that the text of the "due process clauses of the state and the federal constitutions are virtually identical." (Footnote omitted.) *State* v. *Lockhart*, 298 Conn. 537, 551, 4 A.3d 1176 (2010); see also *State* v. *Purcell*, 331 Conn. 318, 344–45, 203 A.3d 542 (2019). Like the language in the federal due process clauses, no language in our state due process clauses suggests a particular level of protection from prearrest delay. Cf. *State* v. *Griffin*, 339 Conn. 631, 692, 262 A.3d 44 (2021), cert. denied,      U.S.     , 142 S. Ct. 873, 211 L. Ed. 2d 575 (2022). Nor are there any historical insights suggesting that Connecticut's constitutional framers intended our due process clauses to afford defendants the supposed protection from prearrest delay that a majority of this court holds today that they afford. See *State* v. *Santiago*, 318 Conn. 1, 16–17, 122 A.3d 1 (2015) ("due process protections take as their hallmark principles of fundamental fairness rooted in our state's unique common law, statutory, and constitutional traditions"). In particular, I am unaware of any common-law recognition of a measure of protection from prearrest delay, akin to the equitable defense of laches. And, while it is likely that advances in science such as DNA testing will continue to result in the resolution of cold cases and in more prosecutions of crimes committed long ago, unlike scientific advances, delayed prosecutions do not pose an entirely new issue for our courts. See generally, e.g., *State* v. *Honsch*, 349 Conn. 783, 322 A.3d 1019 (2024); *State* v. *Skakel*, 276 Conn. 633, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

Next, unlike the other concurrences, I do not find that our own precedent supports, let alone compels,

this court's adoption of a new balancing test. Both of the other concurrences principally rely on this court's decision in *State* v. *Hodge*, 153 Conn. 564, 219 A.2d 367 (1966), in which this court decided, prior to *Marion* and *Lovasco*, to apply a totality of the circumstances test to conclude that a three week delay between the alleged offense and the defendant's arrest for possession and sale of narcotics did not constitute an unreasonable seizure of the person under [the predecessor to article first, § 7, of the 1965 Connecticut constitution]. See id., 566–69. Although *Hodge* concerned a different state constitutional provision, we ultimately held that a reasonable delay caused by police investigation "should not undermine the legality of subsequent arrests and convictions except under unusual and clearly prejudicial circumstances." Id., 569. We also stated that "[o]ften a lengthy delay is required because the identity of the offender is unknown to the authorities or because additional time is needed to gather sufficient evidence to justify an official charge against one who is suspected of crime. Under such circumstances, the applicable statute of limitations is the ultimate safeguard against a long-delayed arrest and prosecution." Id., 567.

To the extent *Hodge* is relevant to the defendant's claim under our state constitution's due process clauses, as described, the test that this court articulated hews closer to the federal due process standard of *Lovasco* and *Marion* than to any minority balancing test that the concurrences propose. In *Hodge*, we indicated that, for a constitutional argument concerning prearrest delay to succeed, the defendant would have to establish not only prejudice but that "the delay in arresting a defendant (or in otherwise apprising him of the charges against him) continue[d] long after all the evidence ha[d] been assembled, and [became] a product of mere convenience to the state . . . ." Id. The authority that this court relied on in *Hodge* expressly required defen-

dants to demonstrate *both* prejudice and the government's attempt to gain an advantage but did not involve a burden shifting standard requiring the state to demonstrate that the delay was justified. See id., 568, citing *Jackson* v. *United States*, 351 F.2d 821, 823 (D.C. Cir. 1965) (defendant established that delay was "clear responsibility of the [g]overnment and was arranged *solely for its advantage,*" but claim failed because he could not establish prejudice (emphasis added)), and *Ross* v. *United States*, 349 F.2d 210, 215 (D.C. Cir. 1965) (defendant established government's "*purposeful* delay of seven months between offense and arrest" and plausible claim of prejudice (emphasis added)).

Further, "all the circumstances" we mandated in *Hodge* that a trial court consider, including "the length of the delay, the reason for the delay, prejudice to the defendant, and a timely presentation of the claim to the trial court"; *State* v. *Hodge*, supra, 153 Conn. 568; are no different from the considerations of the federal two-pronged test. It is clear, therefore, that we had never applied a balancing approach prior to *Marion* and *Lovasco*, and, since that time, we have consistently agreed with the United States Supreme Court, albeit in response to federal constitutional challenges, that due process protections are " 'limited' " with respect to pre-arrest delay. *State* v. *Morrill*, supra, 197 Conn. 521; see also id. (due process clause " 'does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment' ").[3]

Finally, as both concurrences acknowledge, the majority rule applied in courts across the country is in line

---

[3] If the other concurrences truly believe that *Hodge* is a precedent that dictates how we must treat the defendant's due process claim for prearrest delay under article first, §§ 8 and 9, of our state constitution, it would follow that a defendant should have to suffer only "[s]ome prejudice," not actual and substantial prejudice, which the majority announces will be the standard going forward. *State* v. *Hodge*, supra, 153 Conn. 568.

with the two-pronged test outlined by *Marion* and *Lovasco*. See E. DuBosar, Note, "Pre-Accusation Delay: An Issue Ripe for Adjudication by the United States Supreme Court," 40 Fla. St. U. L. Rev. 659, 671–76 (2013); D. Rang, Comment, "The Waiting Game: How Preindictment Delay Threatens Due Process and Fair Trials," 66 S.D. L. Rev. 143, 154–55 (2021). Nine federal circuits agree with our interpretation of United States Supreme Court precedent and apply the two-pronged test requiring a defendant to establish actual prejudice and that the delay was the product of an unjustifiable motive. See E. DuBosar, supra, 669–70. Three federal circuits reject that approach in favor of a balancing test. See id., 669–70; D. Rang, supra, 152–53. Likewise, approximately thirty states' courts use the two-pronged test; D. Rang, supra, 154; thirteen states' courts apply some form of a balancing test; id., 155; and courts in the remaining states have not addressed the issue or the test that they apply is not clear. See E. DuBosar, supra, 681–84; D. Rang, supra, 155. Although the other concurrences discount this weight of authority as nothing more than quantitative, I do not find the case law on which the concurrences rely any more persuasive than the arguments that our state constitutional text, history or Connecticut precedent support their balancing test.

## B

I also believe that public policy (the final *Geisler* factor) does not support the balancing test, which defendants may invoke in unlimited circumstances, that a majority of this court adopts today.[4] This court is, of

---

[4] Claims invoking the new balancing test are likely to be asserted in a motion to dismiss for delays of any length, regardless of the alleged crime and whether it has a statute of limitations. The balancing test encourages defense counsel to raise a due process claim in unlimited numbers of cases, even if it is doomed to failure. Upon a showing of prejudice, the other concurrences place the burden on the state to establish its reasons for delay. Although defense counsel might have no indication before filing a motion to dismiss how the state will justify a particular delay, the chance (however slim) that the state will be unable to explain its delay, resulting in the

course, free to arrive at its own conclusions about how public policy should inform our construction of the state constitution. It is well established that the federal constitution, as interpreted by the United States Supreme Court, provides merely "the floor" when it comes to protecting the constitutional rights of Connecticut residents. (Internal quotation marks omitted.) *State* v. *Haynes*, supra, 352 Conn. 245. We have, therefore, at times, departed from that court's precedent based solely on our disagreement with its assessment of the societal costs and benefits of a particular constitutional rule when interpreting and applying parallel provisions of our state constitution. See, e.g., *State* v. *Marsala*, 216 Conn. 150, 167, 579 A.2d 58 (1990) ("[w]e simply cannot accept the conclusion reached by the [court in *United States* v. *Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)] as a result of its weighing of the relevant costs and benefits of excluding evidence obtained through police officers' good faith reliance upon a warrant issued by a detached and neutral judicial official").

I certainly have been open to these arguments and do not subscribe to following a particular rule as a matter of state constitutional law merely because the nation's highest court has established it.[5] We are, after

dismissal of all charges, would call for the filing of a motion in innumerable situations. Defense counsel might conclude that it would be wise to raise such a claim to anticipate a subsequent claim in a habeas action that failure to do so constituted deficient performance. Moreover, a prepared defense counsel can raise this due process claim in every case to gain an important, pretrial tactical advantage: a full walk-through of the state's entire investigation and an explanation as to why the state made certain decisions. Resources spent assembling the justification for any delay are resources the state cannot commit to the actual prosecution.

[5] See, e.g., *State* v. *Purcell*, supra, 331 Conn. 362 (adopting state constitutional prophylactic rule to protect accused's invocation of right to counsel during custodial interrogation); *State* v. *Harris*, 330 Conn. 91, 96, 131, 191 A.3d 119 (2018) (due process clause in article first, § 8, of Connecticut constitution provides broader protection than federal constitution with respect to admissibility of eyewitness identification testimony); cf. *State* v. *Castillo*, 329 Conn. 311, 338–39, 186 A.3d 672 (2018) (*D'Auria, J.*, dissenting) (custodial protections mandated by *Miranda* v. *Arizona*, 384 U.S. 436, 478–

all, our own laboratory of democracy. In the present case, however, I am not persuaded by any of the legal arguments advanced, and I cannot conclude that we will be on the right side of public policy by adopting the balancing test that a majority of this court adopts today. Rather, I believe that any policy reasons that arguably support the rule that all my participating colleagues have concluded is now constitutionally compelled are outweighed by significant policy reasons against adopting such a rule.

I continue to believe that "[t]he statute of limitations, not the due process clause, defines the limits of protection" from prearrest delay. *State* v. *Echols*, supra, 170 Conn. 18. "The [d]ue [p]rocess [c]lause has a *limited role to play* in protecting against oppressive delay." (Emphasis added.) *United States* v. *Lovasco*, supra, 431 U.S. 789. The legislative purpose behind a "statute of limitations is to safeguard criminal defendants from the deprivation of their liberty through the use of stale evidence to secure a conviction" by having "the important and salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." (Internal quotation marks omitted.) *State* v. *Daren Y.*, 350 Conn. 393, 410–11, 324 A.3d 734 (2024); see also *State* v. *Police*, 343 Conn. 274, 292, 273 A.3d 211 (2022) (statutes of limitations " 'represent legislative assessments of relative interests of the [s]tate and the defendant in administering and receiving justice' "). The legislature's decision *not* to enact a statute of limitations for murder constitutes a policy declaration as well, and, in my view, it is just as firm a declaration of policy as when it enacts a statute of limitations—short or long— for certain crimes. This is not a situation in which it is difficult to discern intent from legislative silence. See, e.g., *State* v. *Hurdle*, 350 Conn. 770, 781, 326 A.3d 528

79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), should be afforded to juveniles regardless of whether they are in police custody).

(2024). Rather, the legislature's decision not to enact a statute of limitations for murder establishes that it is the policy of the state to allow police and prosecutors an unlimited amount of time to investigate and prosecute the most serious crime: the taking of a life. See *Drumm* v. *Freedom of Information Commission*, 348 Conn. 565, 597, 308 A.3d 993 (2024) ("the fact that there is no statute of limitations means that unsolved murder investigations may remain open, at least nominally, forever").

I understand the other concurrences to contend essentially that, under the due process clauses of our state constitution, the legislature's determination to have, or not to have, a statute of limitations for certain crimes, can be held to be unconstitutional as applied to the circumstances of a potential case. To protect against this hypothetical future case, both concurrences propose a test for criminal defendants that is less stringent than that outlined by federal law and that augments the legislatively determined limitation period. As Justice Ecker reminds us; see part I A 3 of Justice Ecker's concurring opinion; when evaluating whether a particular additional or substitute procedural safeguard is necessary as a matter of state constitutional due process, we have "[b]orrow[ed] from the federal constitutional standard enunciated by the United States Supreme Court in *Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), [and] we have held that due process under the Connecticut constitution requires us to 'consider three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " *State* v. *Morales*, 232 Conn. 707, 721, 657 A.2d 585

(1995). Based on the familiar *Mathews* analysis, I conclude that the balancing test that this court has adopted is not required (or, frankly, a good idea) as a matter of state constitutional law. I am not satisfied that our state constitution, any more than the federal constitution, mandates that a trial court at a pretrial or posttrial hearing evaluate the reasons why the prosecution made specific tactical or legislative decisions during its investigation, including those made based on the availability of financial and personnel resources. I now consider the *Mathews* factors.

1. *Private Interest and Risk of Erroneous Deprivation.* The private interest at stake—the defendant's liberty—is obviously high. This would be true in any given criminal prosecution in which a defendant claims he has been prejudiced by the state's delay in prosecuting him, although it is depicted in dramatic relief in the present case, involving a murder prosecution brought thirty-two years after the death of the victim.

But the facts of the present case do not make the private interest in favor of the balancing test adopted by a majority of this court any higher given that the other concurring justices do not suggest—nor could they—that their balancing test will be confined only to (1) murder cases, (2) prosecutions with no statutes of limitations, (3) prosecutions delayed for at least thirty years, or (4) cases solved by DNA testing, in which the claim of prejudice involves lost alibi witnesses or witnesses, such as in the present case, who would have identified a third party as the perpetrator. The balancing test adopted in this case permits defendants to demand, for even the shortest delays, a pretrial inquiry into the investigative techniques and motivations of the state and the police, regardless of whether the charged crimes are subject to a statute of limitations. See, e.g., *State* v. *Echols*, supra, 170 Conn. 16–17 (rejecting defendant's claim of constitutional prejudice based on *six month delay* in bringing charge of sale of narcotics to undercover police agent); *State* v. *Coleman*, 199 Conn. App. 172, 180

n.6, 235 A.3d 655 (rejecting defendant's due process claim that he was prejudiced by state's *three year delay* in bringing charges of assault, robbery and possession of firearm, which were subject to five year statute of limitations), cert. denied, 335 Conn. 966, 240 A.3d 281 (2020). In fact, *Hodge*, the case that both of the other concurrences consider seminal to the constitutional question in this case, involved a prosecution for the sale of narcotics in which the defendant claimed that he was prejudiced by a three week delay before being arrested. See *State* v. *Hodge*, supra, 153 Conn. 566–67.

Nor can the other concurrences credibly maintain that the "risk of an erroneous deprivation of [the defendant's] interest through the procedures used"; *Mathews* v. *Eldridge*, supra, 424 U.S. 335—the trial rights that defendants presently enjoy—is high without the newly minted due process balancing test. In fact, both concurrences admit the risk is low. Justice Ecker, for example, assures us of "how difficult it is for a defendant to establish a due process violation and how rarely prosecutions are dismissed on th[e] basis [of the balancing test]." Part I A 4 of Justice Ecker's concurring opinion. Justice Alexander seconds that notion, suggesting to trial courts that it will be "an exceedingly rare case for a defendant to establish a due process violation when 'the delay is legitimately investigative in nature.'" Because the cases in which the new test will be *invoked* are likely to be anything but rare, however, making an appropriate evaluation of the remaining two factors under *Mathews* is critical. I now turn to the government's interest.

2. *The government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.* The burdens likely to accompany the standard adopted by a majority of this court and explained by the other concurrences are substantial. The United States Supreme Court was able to foresee that increasing the

pressure on state prosecutors with a rule that put prosecutions at risk before prosecutors are "completely satisfied that [they] should prosecute" would result in rushed investigations and even greater problems for defendants. "Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed' . . . ." *United States* v. *Lovasco*, supra, 431 U.S. 795. This rule would "increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried," which is massively disruptive to an accused's life, liberty, and family. Id., 791.

The balancing test that a majority of this court makes mandatory today under our state constitution will require that authorities investigating a crime preemptively anticipate how the passage of time might impact a suspect's defense (if they have a suspect and happen to know his defense), including when witnesses or other evidence might become unavailable. These anticipatory forces work to discourage prosecutors from waiting to bring a case until they are "completely satisfied that [they] should prosecute and will be able promptly to establish guilt beyond a reasonable doubt," or risk losing the prosecution altogether. Id., 795. I would decline this invitation to undermine the legislature's public policy determination—reflected in its determination of whether to enact a statute of limitations—by adopting a test authorizing a court to void a prosecution—before or after trial and in the name of due process—absent state action seeking to gain a tactical advantage.

I am reluctant to permit defendants and trial courts to wade into and second-guess the prosecution's assessment of when appropriately to bring its case. "Allowing inquiry into when the police could have arrested or when the prosecutor could have charged would raise difficult problems of proof," causing trial courts to "*be engaged in lengthy hearings in every case to determine whether or*

*not the prosecuting authorities had proceeded diligently or otherwise.*" (Emphasis added; internal quotation marks omitted.) *United States* v. *Marion*, supra, 404 U.S. 321 n.13. Even if trial courts deny most motions, as my colleagues make clear should happen, the impact on the executive prerogative will have occurred, either by hastening prosecutions that authorities were not ready to bring, or by having to explain their investigative decisions in court. But cf. *State* v. *Corchado*, 200 Conn. 453, 460, 512 A.2d 183 (1986) (although "not unlimited," "[t]he criminal justice system gives prosecutors a wide latitude and broad discretion in determining when, who, why and whether to prosecute for violations of the criminal law" (internal quotation marks omitted)).

On its face, it might appear that the balancing test benefits defendants while the two-pronged federal test favors the state. In my view, this is not accurate. The fundamental basis supporting the United States Supreme Court's adoption of the two-pronged approach is the fairness afforded to prospective defendants and the rejection of a rule that would require an arrest prematurely. See *United States* v. *Lovasco*, supra, 431 U.S. 791, 793. I fear that prudential concerns that presently discourage the state from arresting a defendant as soon as possible just because it can, including " 'the rights of the accused and . . . the ability of society to protect itself' "; id., 791; will be undermined by the balancing test, which, indeed, will create its own significant burdens by (1) pressuring prosecutors into resolving doubtful cases in favor of early and possibly unwarranted prosecutions, (2) discouraging the state from fully considering factors in addition to the strength of the case before determining whether prosecution would be in the public interest, and (3) impairing a prosecutor's ability to continue to investigate cases that involve more than one criminal transaction or actor. See id., 793.

The intensive inquiry of the balancing test will require the prosecution, along with investigative and cold case units in police departments statewide, to change the way it operates. The other two concurrences would have the state and its investigative teams specifically document *how* and *why* they made decisions to allocate resources to one case rather than another so that they might—perhaps many years down the road—satisfy their burden under this test. Anticipating that its evidentiary burden will shift once the defendant manifests that he is sufficiently prejudiced, the state will likely have to have evidence ready to present to a court that goes beyond simply whom it spoke with and when, but also why certain leads were not pursued or why other matters were given priority. When deciding whether to arrest a potential defendant, or even whether to make certain cases a priority, the state might also need to consider the health of potential witnesses for the defendant, if known, as well as the health of the state's own investigators, who could justify decisions made in the past. Some might be retired, deceased, or otherwise unavailable when the state ultimately decides to prosecute. If the state does not take these burdensome considerations into account, decades of work might be for naught under the new balancing test.

Finally, balancing tests such as those the other concurrences favor are notoriously difficult to administer. It might be true that some balancing tests, such as the test for whether a defendant has been deprived of a speedy trial, involve factors similar to those relevant to the test announced today. See, e.g., *State* v. *DePastino*, 228 Conn. 552, 560, 638 A.2d 578 (1994) (factors to balance relevant to claim of violation of speedy trial right include " '[1] [l]ength of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant' "). That is where the resemblance ends. For example, the speedy trial test

does not involve a shift of the burden of proof from the defendant to the state upon a showing of prejudice. But, even more distinguishable than the lack of burden shifting is that these factors "must be considered together with such other circumstances as may be relevant." (Internal quotation marks omitted.) *State* v. *Roman*, 320 Conn. 400, 418, 133 A.3d 441 (2016). In contrast, the other concurrences call for the weighing of two values against one another—the state's justification against the defendant's prejudice—to reach an absolute answer as to whether the case can proceed.[6] One court, the United States Court of Appeals for the Fifth Circuit, has described this exercise as "compar[ing] the incomparable." *United States* v. *Crouch*, 84 F.3d 1497, 1512 (5th Cir. 1996), cert. denied, 519 U.S. 1076, 117 S. Ct. 736, 136 L. Ed. 2d 676 (1997), and cert. denied sub nom. *Frye* v. *United States*, 519 U.S. 1076, 117 S. Ct. 736, 136 L. Ed. 2d 676 (1997). "The items to be placed on either side of the balance (imprecise in themselves) are wholly different from each other and have no possible common denominator that would allow determination of which 'weighs' the most." Id. The Fifth Circuit, in its en banc ruling, continued: "Not only is there no scale or conversion table to tell us whether eighty percent of minimally adequate prosecutorial and investigative staffing is outweighed by a low-medium amount of actual prejudice, there are no recognized general standards or principles to aid us in making that determination and virtually no body of precedent or historic practice to look to for guidance." Id. Therefore, the balancing test is impractical and will likely lead to inconsistent results because "[t]he denominators on both sides of the equation are simply incommensurate, such that [i]t is more like judg-

---

[6] Justice Alexander calls for trial courts to " 'balance the defendant's prejudice against the government's justification for delay.' " Justice Ecker says it just a little differently: the court must "weigh the state's justifications for the delay against the prejudice suffered by the defendant." Part I A 2 of Justice Ecker's concurring opinion.

ing whether a particular line is longer than a particular rock is heavy." (Internal quotation marks omitted.) D. Diethrich, Note, "If It Ain't Broke, Don't Fix It: Indictment Delays and Due Process," 15 Elon L. Rev. 181, 202 (2023). Moreover, as I will explain in part IV of this opinion, trial courts will now be responsible for figuring out how to balance a rock and a line with almost no practical guidance as to how to accomplish this balance, save for being told that a defendant should rarely prevail.[7]

The administrative and financial burdens the balancing test creates are not fictional or hypothetical. In fact, plagued by these problems, some jurisdictions (including the Fifth Circuit, which spawned the minority rule) have rejected their prior adoption of the balancing test, returning instead to the federal two-pronged approach. See, e.g., *United States* v. *Crouch,* supra, 84 F.3d 1508–11; see also *Jackson* v. *State,* 347 So. 3d 292, 306 (Fla. 2022) (rejecting balancing test under Florida law in favor of federal two-pronged test). The reasons that these jurisdictions have reversed course include both the impracticality of balancing two very distinct values or considerations, and the separation of powers concerns implicated by requiring that courts second-guess decisions such as the staffing of certain investigations. See *United States* v. *Crouch,* supra, 1512–13; *Jackson* v. *State,* supra, 305.[8] I would heed the warning of these jurisdictions.

[7] For example, the other two concurrences have not ruled out, if theirs is a true balancing test, that a defendant's claim of actual and substantial prejudice can outweigh, in a particular (but rare) case, even entirely defensible and justified delays in bringing the prosecution. In that case, the prosecution would be barred, as a matter of due process, notwithstanding the legislature's determination not to enact a statute of limitations for the crime or to enact one of a certain length.

[8] The United States Court of Appeals for the Fourth Circuit has entertained but rejected arguments that it should reject its use of the balancing test and instead adopt the two-pronged test on the ground that it is restricted from doing so. See *Jones* v. *Angelone,* 94 F.3d 900, 905 (4th Cir. 1996) ("as the [c]ommonwealth is aware, we cannot, as a panel of the court, overrule

3. *The Value of Additional Safeguards.* I understand my colleagues' sincere concerns that delayed prosecutions have the potential to compromise a defendant's due process right to a fair trial. I share those concerns. But I am not persuaded that it is sensible (let alone required) to "constitutionalize" the apparatus that a majority of this court erects in this case. Nor am I persuaded that it, in fact, brings with it significant additional safeguards.

Prosecutors already have significant incentives to initiate an arrest as promptly as they can. Delays can significantly compromise the state's case as much as it can a defendant's case: evidence can decay, memories can fade, suspects may flee, and witnesses can become unavailable. Proving the defendant's guilt beyond a reasonable doubt is a high burden as it is. It does not become easier to meet this standard with aging evidence and witnesses. Pressure from victims and their families can also work to prevent prosecutors from delaying the decision to make an arrest. And, of course, there are statutes of limitations for many crimes. For reasons already discussed, I do not believe that interpreting our due process clauses to require that the state hasten to make "[t]he decision to file criminal charges, with the awesome consequences it entails"; *United States* v. *Lovasco*, supra, 431 U.S. 794; is a wise policy choice for either the state or for potential defendants.

Moreover, our courts are already equipped with tools to ensure that a defendant's rights are protected. One notable existing procedure available to defendants is embodied in General Statutes § 54-56, which provides trial courts with the authority to, "upon motion by the defendant, dismiss any information . . . if, in the opinion of the court, there is not sufficient . . . cause to

the decision of another panel; only the en banc court may overrule a prior panel decision").

justify the . . . continuing of such information or the placing of the person accused therein on trial." We have observed that § 54-56 was enacted "to prevent unchecked power by a prosecuting attorney." (Internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 116 n.26, 715 A.2d 652 (1998). We have also said that "the power to render a dismissal under § 54-56 for insufficient cause is to be sparingly exercised and then only with great caution and awareness of the probable consequences." (Internal quotation marks omitted.) *State* v. *Kinchen*, 243 Conn. 690, 703–704, 707 A.2d 1255 (1998); see also *State* v. *Corchado*, supra, 200 Conn. 464. To ensure that this discretion is exercised in accordance with these principles, it is essential for "the court explicitly to weigh all the competing factors and considerations of fundamental fairness to both sides—the defendant, the state and society, and presumably the victim. . . . This difficult and delicate process necessarily involves a careful consideration by the court of such factors as the strength of the state's case, the likelihood of conviction, the severity of the crime, its effect on the victim, the strength of the defendant's defense, the defendant's personal situation, and all the other myriad factors that underlie a judgment regarding fundamental fairness." (Citation omitted.) *State* v. *Dills*, 19 Conn. App. 495, 503–504, 563 A.2d 733 (1989); see also *State* v. *Daniels*, 209 Conn. 225, 238, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989); *State* v. *Corchado*, supra, 458. Thus, a trial court's invocation of its authority to dismiss a case under the insufficient cause prong of § 54-56 can be justified only when (1) the court expressly and carefully has considered all of the relevant competing factors, and (2) dismissal is supported by overriding equitable considerations. See *State* v. *Kinchen*, supra, 704. There is not much case law outlining when the statute applies. But this court has made clear that it

should be invoked " 'only in the most compelling of circumstances' "; *State* v. *Golodner*, 305 Conn. 330, 339, 46 A.3d 71 (2012); meaning that trial court dismissals under this statute will be as "exceedingly rare" as Justice Alexander suggests in her concurrence that dismissals will be under the new constitutional balancing test adopted by a majority of this court. I would allow trial courts to employ this already existing statutory device rather than resorting to manufactured constitutional balancing tests that have little hope of being administered consistently.[9]

Furthermore, § 54-56 is but one of many other existing procedures available under our rules of practice that amply equip trial judges with authority to ensure that trials are conducted fairly in delayed prosecutions, just as in all prosecutions. For example, trial courts have ample discretion when making evidentiary rulings that they can—and should—exercise in favor of defendants if the passage of time has so compromised their ability to defend themselves that their right to a fair trial could be jeopardized.[10] Posttrial, the trial court also has both legal and discretionary authority to review a jury verdict, including by entertaining judicially recognized motions for a judgment of acquittal or for a new trial. See Practice Book §§ 42-51 and 42-53. Finally, this court has the authority and responsibility to review whether

[9] Notably, although a court undertaking an analysis under § 54-56 is called on to "weigh all the competing factors and considerations of fundamental fairness"; *State* v. *Dills*, supra, 19 Conn. App. 504; there is no shift of the burden of proof and no weighing of one thing against another: prejudice and justification. Moreover, the fact that this balancing derives from case law interpreting and applying a statute means that the legislature can alter or eliminate the balancing, as opposed to a constitutional balancing that might be written in stone (unless overruled and abandoned).

[10] For example, if the written statements of the deceased witness, Veronica Saars-Doyle, were not so inconsistent and unreliable, the trial court in the present case might have exercised its discretion to admit them so that the defendant could mount a defense.

the evidence supported the jury's finding of guilt beyond a reasonable doubt.

Ultimately, I would not conclude, as my colleagues do, that the balancing test adopted by a minority of jurisdictions is necessary or appropriate as a matter of our state constitutional law. I do not believe that anything in the text or history of our state constitution, or in this court's precedent, supports recognition of the additional procedural safeguard that a majority of this court today mandates, and, assisted by the *Mathews* test, I do not conclude that the state constitution otherwise compels it as a matter of policy. My analysis involves essentially the same reasons that both the Fifth Circuit and the Florida Supreme Court cited to when they both abandoned the balancing test after having initially started down that road. To use an idiom that, in my view, sums up the *Mathews* test, "the juice isn't worth the squeeze." In light of the procedures already available to defendants and the ample discretion trial courts already possess to conduct trials fairly, I am not persuaded that the value of the majority's balancing test is sufficient to justify the burdens that it will impose on the state, the courts, and ultimately on defendants, especially given what the other concurrences admit is a low risk. I would decline the invitation that the other concurrences have accepted to go beyond the federal two-pronged standard, and instead would trust trial and appellate courts to ferret out that unicorn delayed prosecution that substantially prejudices a defendant, which the other concurrences are on a quest to prevent, and render relief more conventionally.

## IV

The due process balancing test applicable to claims of unconstitutional prejudice from delayed prosecutions, announced today and explained in the two other concurrences, creates many questions, and the concur-

rences provide little guidance to trial courts and the Appellate Court on how to administer it or to review its application, respectively. Assuring trial courts that it will be "exceedingly rare" for the test to be met does nothing to assist those courts in making the necessary findings or even to assist the parties in developing an appropriate record. The motivation for those concurring in the announcement of this test might be an anticipated increase in erstwhile cold case prosecutions, as in the present case, in light of the revolutionary crime-solving capabilities of DNA testing. Those favoring today's balancing test might be confident that, however our trial courts develop and apply the test " 'in the first instance,' " and however the "body of case law" develops applying this test as a question of law, as Justice Alexander states in her concurring opinion, scientific advances such as those in DNA testing, which might identify a suspect never before identified, or clinch a prosecution that perhaps involved a suspect but not sufficient proof to make an arrest, will always suffice to justify any delay and rebut any claim of actual and substantial prejudice.

But delayed prosecution claims come in all varieties, and, as previously discussed, this state's due process clauses (and therefore this balancing) are not limited to murder prosecutions, to crimes without statutes of limitations, or to particular cases finally solved by DNA testing. I do not believe it is wise to adopt a new test without a set framework as to how it is to work. Directing our trial courts to several federal circuits that apply a version of the balancing test offers very little guidance because, as at least some of my colleagues acknowledge, there is no prevailing balancing test and the decisions in those circuits are inconsistent. Compare *United States* v. *Avants*, 367 F.3d 433, 442 (5th Cir. 2004) (addressing only bad faith prong and not prejudice prong), with *United States* v. *Davis*, 571 Fed. Appx. 248,

249 (4th Cir. 2014) ("the [g]overnment did not commit prosecutorial [impropriety] in delaying [the] bringing [of] an indictment against [the defendant]"). Left unresolved is when trial courts are to apply the balancing (before or after trial), what evidence will suffice for the parties to meet their respective burdens, and how an appellate court will review the trial court's determination. It is predictable that the balancing test will not yield a consistent body of law. See, e.g., *United States* v. *Wood*, Docket Nos. 91-5186 and 92-5010, 1992 WL 301975, *1 (4th Cir. October 21, 1992) (decision without published opinion, 977 F.2d 575) (under balancing test, "a determination of whether such a delay has denied due process necessitates a case-by-case inquiry").

The practicalities of implementing the balancing test that a majority of this court adopts present additional, and foreseeable, difficulties for the state, the defendant, and the courts. I highlight the most pressing of these issues in the hope of casting an eye forward to perhaps reconsidering whether the test is necessary or appropriate the next time we have the issue before us.[11]

1. When the trial court should conduct this balancing is not clear. Presumably, the trial court must hold a hearing to entertain claims of prejudice from the defendant and justifications from the state, both of which

---

[11] Unresolved, but likely to arise almost immediately, is whether the new balancing test announced today will apply retroactively to defendants who already have been convicted who might, by way of habeas corpus or otherwise, seek judicial review of the reasons why the state delayed their arrest. See, e.g., *State* v. *Rogers*, 344 Conn. 343, 364–65, 279 A.3d 184 (2022) (complete retroactive effect is most appropriate when new constitutional principle is designed to enhance accuracy of criminal trials); *State* v. *Turner*, 334 Conn. 660, 677 n.6, 224 A.3d 129 (2020) (same); see also *Tatum* v. *Commissioner of Correction*, 349 Conn. 733, 744–50, 322 A.3d 299 (2024) (determining whether this court's creation of new watershed rule of criminal procedure applies on collateral review). Is the state required to dust off its decades old files to defend these challenges and offer reasons why it did not more rapidly arrest defendants who ultimately were convicted?

are likely in many cases to require testimony. Justice Alexander suggests that the court could hold the hearing and make the determination either pretrial or post-trial. Justice Ecker does not say, but he articulates a view that one of the relevant factors in determining whether the defendant has established actual and substantial prejudice from the delay includes the strength of the state's case. See part I A 2 of Justice Ecker's concurring opinion. If that is the case, I do not understand how this inquiry can be made pretrial in most cases, unless the court is to hear the entirety of the state's case and to assess its strength (including, somehow, the credibility of witnesses) before the trial begins. And if this constitutional calculus is undertaken post-trial, and the jury has found the defendant guilty beyond a reasonable doubt, the trial court will be in the unenviable position of assessing, by gradations, how far on the spectrum of "beyond a reasonable doubt" the jury found that the state had proved its case so that factor can be balanced against the actual and substantial prejudice the defendant has established.

2. Whenever this balancing is undertaken, the trial court must first determine whether the defendant has sufficiently made out a claim of harm from the delay that would result in "actual and substantial prejudice." The two other concurrences provide examples of what does not satisfy the prejudice test but very little guidance about what would satisfy the test.[12] In the present case, the trial court might have to make credibility determinations, including accounting for witnesses who might exculpate the defendant, inculpate another individual, or testify that the defendant had acted in self-

---

[12] Justice Ecker cites to one case in which a court held that the death of an alibi witness did not cause one of the codefendants to suffer actual and substantial prejudice because the witness' testimony would have been cumulative of other witnesses' testimony. See footnote 5 of Justice Ecker's concurring opinion (citing *United States* v. *McMutuary*, 217 F.3d 477, 482 (7th Cir.), cert. denied, 531 U.S. 1001, 121 S. Ct. 502, 148 L. Ed. 2d 471 (2000)).

defense, while intoxicated, or under extreme emotional distress. Even if the court decides to reject the claim of "actual and substantial prejudice," it will then have to decide whether to complete the balancing test provisionally, and have the state present evidence justifying the delay, to perfect a complete record for appellate review.

If the defendant succeeds in proving actual and substantial prejudice, and the burden shifts to the state to justify the delay, the court today provides even less guidance about what happens next. Although Justice Alexander indicates that a defendant will rarely be able "to establish a due process violation when 'the delay is legitimately investigative in nature,'" that inquiry, too, might require the trial court to assess the credibility of the witnesses offered in support of the legitimacy of the investigative delay. In a case that takes more than thirty years to solve, those who made choices in the investigation—for example, focusing on the wrong suspect, failing to interview certain witnesses, or putting the investigation on hold for lack of resources or for other priorities—might be long retired or deceased. Or will the court accept *any* reasonable explanation that is not contradicted by the record, including posthoc rationalizations, without regard to whether that was an *actual* reason for the delay? Cf. *Johnson* v. *Commissioner of Correction*, 330 Conn. 520, 550–51, 198 A.3d 52 (2019) (in reviewing performance of defense counsel, we are "required not simply to give [the] attorneys the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did" (internal quotation marks omitted)), quoting *Cullen* v. *Pinholster*, 563 U.S. 170, 196, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011).[13]

---

[13] Justice Alexander appears to favor the approach of accepting any reasonable justification, given her speculation—which might be a reasonable guess but is certainly not based on record evidence—that, in 1996, at the time of the defendant's confessions in the present case, authorities did not pursue a prosecution of the defendant because doing so would have subjected him

3. We will have to settle on an appellate standard of review. Although Justice Alexander appears to promise plenary review of the outcome of the trial court's balancing,[14] Justice Ecker does not say. Among the minority of appellate courts that have applied the balancing test, uniformity is lacking in how they review trial court determinations of prejudice and justifications for delay. Some review for abuse of discretion, others for clear error, and yet others review de novo. See, e.g., *United States* v. *Villa*, 70 F.4th 704, 715 (4th Cir. 2023) (de novo review); *United States* v. *Corona-Verbera*, 509 F.3d 1105, 1114 (9th Cir. 2007) (abuse of discretion), cert. denied, 555 U.S. 865, 129 S. Ct. 149, 172 L. Ed. 2d 110 (2008).

In sum, I am not persuaded that we should adopt the minority rule that a majority of this court indulges today. I would uphold the trial court's denial of the defendant's motion to dismiss on a ground different from that relied on by the rest of the court, namely, the defendant's failure to satisfy the second prong of the federal two-pronged test: that the reasons for the delay were unjustifiable.

Accordingly, I respectfully concur in the judgment.

---

to the death penalty and they needed stronger evidence before charging him. It would be important for the state to know if it can simply proffer possibly plausible explanations to meet its burden once the defendant satisfies his burden of proving prejudice. I am not certain whether a majority of this court would agree with Justice Alexander, however.

[14] If, indeed, we conduct a de novo review, it might be advisable, especially in decades old murder cases, to avoid cases that were not dismissed (either pretrial or posttrial) for lack of sufficient prejudice and, therefore, in which no evidence was presented on the state's justification for the delay and no balancing was undertaken. If an appellate court a few years later holds that the prejudice actually *was* sufficient and that the trial court should have conducted a balancing of that prejudice against the state's purported reason for delay, the delay will only continue to mount.